Henry H. BLACK, Petitioner,

v.

AMERICAN BANKERS INSURANCE
COMPANY, Respondent.

No. B–2805.

Supreme Court of Texas.

Jan. 5, 1972.

Rehearing Denied Feb. 9, 1972.

James N. Phenix, Henderson, for petitioner.

Sheehy, Cureton, Westbrook, Lovelace & Nielsen, Benjamin N. Hamilton, Waco, for respondent.

DANIEL, Justice.

Henry H. Black, plaintiff, recovered a judgment in a nonjury case against American Bankers Insurance Company, defendant, for hospital charges, penalty and attorney's fee alleged to be due under a medical and hospital insurance policy. The Court of Civil Appeals reversed and rendered on the grounds that the disputed hospital expenses were not "actually incurred" by plaintiff because they were the obligation of and chargeable only to the Social Security Administration under the federal Medicare program. Tex.Civ.App., 466 S. W.2d 616. We reverse the judgment of the

Court of Civil Appeals and affirm the judgment of the trial court.

The case was submitted on stipulated facts, which are summarized in the opinion of the Court of Civil Appeals. The relevant portions reflect that plaintiff at all times material hereto was covered by the medical and hospital policy in question, which was issued to him on August 1, 1963;[1] that he has since paid the annual premium, which is now $330.40 per year; that plaintiff was necessarily admitted to Henderson Memorial Hospital in Henderson, Texas, for the treatment of diverticulitis and other ailments on September 28, 1968; and that he "incurred the reasonable, necessary and customary charges by said Hospital of $781.05 . . . as shown by bill attached." The hospital bill was made out to Mr. H. H. Black, P. O. Box 261, Selman City, Texas, in the total sum of $781.-05, and shows a credit for payment by Medicare of $587.05 and a payment by defendant in the sum of $193.00. It also shows credit for a payment by Eagle Life Insurance Co., another of plaintiff's insurers, in the sum of $519.28, most of which was refunded to plaintiff.

The policy in question provides for payments to the insured unless he directs otherwise. It contains no "pro rata" or "other insurance" clause providing for reduction of defendant's liability in the event plaintiff's hospitalization expense is also covered or paid by other insurance policies or programs. It was stipulated that plaintiff "had certain other policies of hospitalization or cash indemnity policies covering the hospital confinement here in question", and these carriers and the amounts paid by each were listed. The stipulations also state that plaintiff "was covered under the Medicare program of the federal government," and that plaintiff "pays $3.00 per month medical expense coverage under Part 'B' for 'Medi-

1. This was about two years prior to the enactment of the federal Health Insurance for the Aged Act of 1965, commonly and hereinafter referred to as "Medicare." Public Law 89–97, 89th Cong., 1st Sess., approved July 30, 1965; 79 Stat. 286; 42 U.S.C.A. § 1395 et seq. Unless otherwise noted, Section numbers and quotations are from the original Act, 79 Stat. 286.

care' to the Social Security Administration." Section 1803 (42 U.S.C.A. § 1395b) provides that nothing in the Act shall prevent any individual from purchasing or securing other protection against the cost of any health services.

Defendant raises no question or defense based upon these duplicate coverages by other insurers for the same hospitalization period. It concedes liability if plaintiff had selected a hospital which did not participate in the Medicare program. Its primary defense is that, since plaintiff elected to enter a hospital eligibile for direct payments from Medicare, he did not "actually incur" that portion of his hospital expense which Medicare was obligated to pay and which the hospital had agreed "not to charge" Medicare patients. The relevant provision of the policy is in "Part III. Medical and Hospital Benefits", which provides: "The Company will pay indemnities for the usual and customary expenses *actually* and necessarily *incurred* only while a person insured hereunder is confined as a bed patient . . ." (Emphasis ours.)

The Health Insurance Benefits Agreement between the Social Security Administration and Henderson Memorial Hospital was entered into in accordance with Section 1866 of the Medicare Act (42 U.S.C.A. § 1395cc), which reads:

"Any provider of services shall be qualified to participate under this title (Title XVIII) and shall be eligible for payments under this title if it files with the Secretary an agreement . . .

(A) not to charge, except as provided in paragraph (2), any individual or any other person for items or services for which such individual is entitled to have payment made under this title . . . and

(B) to make adequate provision for return . . . of any moneys incorrectly

collected from such individual or other person."

Based entirely upon its construction of the foregoing Section of the Act and the contract of the hospital pursuant thereto, the Court of Civil Appeals held that plaintiff never became obligated to pay the hospital and therefore did not "actually incur" that portion of the hospitalization expenses in question. This holding fails to consider and cannot be reconciled with other Sections of the Act which specify that Medicare benefits provided for an individual are to be paid "on his behalf"; that "no payment may be made . . . for any expenses incurred for items or services . . . for which the individual furnished such items or services has no legal obligation to pay . . ."; and that any payment to a provider of services for services furnished any individual "shall be regarded as a payment to such individual." These Sections, which shed considerable light upon the meaning, purpose and effect of Section 1866, are as follows:

Section 1812 (42 U.S.C.A. § 1395d): "The benefits provided *to an individual* by the insurance program under this part shall consist of entitlement to have payment *made on his behalf* (subject to the provisions of this part) for . . . ." [2]

\* \* \* \* \* \*

Section 1862 (42 U.S.C.A. § 1395 y): (a) "Notwithstanding any other provision of this title [Title XVIII], *no payment may be made* under part A or part B *for any expenses incurred* for items or services . . . ."

(2) *for which the individual furnished such items or services has no legal obligation to pay*, and which no other person (by reason of such individual's membership in a prepayment plan or otherwise) has a legal obligation to provide or pay for; . . . ."

2. Emphasis supplied unless otherwise noted. The stipulations agree that the Social Security Administration made payments to the hospital and doctor *"for Henry H. Black* for his confinement."

\* \* \* \* \* \*

Section 1870(a) (42 U.S.C.A. § 1395gg [a]): "Any payment under this title to any provider of services or other person with respect to any items or services furnished any individual shall be regarded as a payment to such individual."

█ It is a cardinal rule of statutory construction that all sections, words and phrases of an entire act must be considered together; every provision should be construed with every other portion to produce a harmonious whole; and one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such construction if standing alone. Labor Board v. Lion Oil Co., 352 U.S. 282 (1957); Martin v. Sheppard, 129 Tex. 110, 102 S.W.2d 1036 (1937); Spence v. Fenchler, 107 Tex. 443, 180 S.W. 597 (1915); Lufkin v. City of Galveston, 63 Tex. 437 (1885).

█ Considering all provisions of the Medicare Act together, it is quite clear (1) that a Medicare patient must originally incur the hospital expenses and a legal obligation to pay them before the Social Security Administration can pay any portion thereof to the hospital "on his behalf", and (2) that any such payment is regarded under the Medicare Act as a payment to the individual who is furnished the services by the hospital. It necessarily follows that the only consistent and harmonious construction of Section 1866 (42 U.S.C.A. § 1395cc) is that it merely provides the method by which certain hospital expenses incurred by a Medicare patient are to be paid on his behalf by the Social Security Administration. Instead of proscribing or precluding the incurrence of the original obligation by the aged person who enters the hospital, it simply provides how Medicare will pay

a portion of the debt incurred. Clearly, Medicare's derivative obligation to pay arises from the eligible patient's original incurrence of the obligation, without which there could be no payment under the Act from Medicare to the hospital. When thus considered along with all other relevant provisions of the Act, it appears that the purpose of the "no charge" provision in Section 1866, and the contracts made pursuant thereto, was to prevent the possibility of the hospital collecting twice from the elderly patients.[3] This explains and is consistent with the hospital's placement of all of plaintiff's hospital expenses on the debit side of plaintiff's ledger sheet and making out its total bill to plaintiff, crediting thereon the portion it collected from Medicare and from plaintiff's other insurers.

█ If there is any fact issue, or mixture thereof, in the question of whether plaintiff actually incurred the hospital expenses, it has been resolved by the stipulation of the parties, which recites that plaintiff "incurred the reasonable, necessary and customary charges by said Hospital . . . as shown by the bill attached hereto . ." Plaintiff was in fact the party who selected the hospital and "occasioned", "caused" or "brought on" the obligation to pay for the services, and the bill was made to him. See American Indemnity Company v. Olesijuk, 353 S.W.2d 71 (Tex.Civ.App.1962, writ dism.). Further, as a matter of law, we hold that when plaintiff entered the hospital and received its services, there was created an implied contract to pay for same, and he was liable therefor until he or someone else paid the bill. The fact that his action created a derivative obligation on the part of one or more third parties to pay the hospital, or to reimburse him, did not affect his obligation under the implied contract between him and the hospital. If these

3. Defendant recognizes that this Section's main thrust is against *collection* of the charges from the Medicare patient: "By virtue of the statutory agreement between the hospital and the Government, the hospital agreed to look solely to the Federal Government for payment of these charges and not to attempt *to collect* them from plaintiff." (Emphasis ours.) Respondent's Reply to Application for Writ of Error, p. 19.

derivative obligors had failed to pay, the hospital would have had a legal claim against plaintiff. Republic Bankers Life Insurance Co. v. Anglin, 433 S.W.2d 795 (Tex.Civ.App.1968, no writ); American Indemnity Company v. Olesijuk, supra.

■ Therefore, we hold that plaintiff "actually incurred" the hospital expenses in question even though they were eventually paid on his behalf by Medicare. As between plaintiff and defendant, the result is the same as if another of plaintiff's insurers had obligated itself to pay, and did pay, the expenses direct to the hospital. Our holding accords with the previous decisions of Texas Courts of Civil Appeals, which were among the first appellate courts in the Nation to interpret the effect of Medicare on coverage under private hospitalization policies.

In Travelers Insurance Company v. Varley, 421 S.W.2d 478 (1967, writ dism.), the Waco Court of Civil Appeals held that a Medicare patient was entitled to recover under that portion of a policy which provided for a payment equal to "the charge made by the hospital to the employee for board and room," even though the hospital had signed a Section 1866 contract with Medicare, and although the Social Security Administration paid that portion of the expenses to which the foregoing words of the policy and that part of the opinion were applicable.

In Dunbar v. National Security Life and Accident Insurance Company, 439 S.W.2d 892 (1969, writ ref., n. r. e.), the Eastland Court of Civil Appeals held to the same effect with respect to a Medicare patient whose policy provided for payment to him of his "actual hospital expense", although the expense was incurred in a hospital which had signed the statutory contract with Medicare under which the expense was paid by Medicare. In Dunbar, the court held that "Dunbar certainly had a legal obligation to pay said bills and he paid appellee [National Security] for protection against the cost thereof." See also American Indemnity Company v. Olesijuk, supra, and Republic Bankers Life Insurance Co. v. Anglin, supra. In Olesijuk, the court held that plaintiff had incurred hospital and doctor expenses within the meaning of a policy covering "all reasonable expenses incurred" even though the expenses billed to him were an obligation of and actually paid by the United States Navy. In Anglin, the court held that the insured "actually incurred" hospital expenses within the meaning of those words of the policy although such expenses may be the obligation of another company under workmen's compensation insurance.

The precise point now before us was also raised by and decided against this defendant in a Louisiana case, Niles v. American Bankers Insurance Company, 229 So.2d 435 (La.Ct.App.1970, writ refused 255 La. 479, 231 So.2d 394). Defendant cites three decisions to the contrary by intermediate or trial courts in Massachusetts, Missouri and Pennsylvania.[4] We believe that the Texas and Louisiana Medicare cases referred to above are better reasoned than those cited from the other jurisdictions.

Defendant urges, as an alternative reason for sustaining the judgment of the intermediate court, a point of error presented to but not passed upon by the Court of Civil Appeals to the effect that the hospital services in question were furnished at the expense of a governmental agency and were therefore excluded from its policy coverage. This point is based on the following provision in the policy under "Part IX. Exclusions":

"No indemnities whatsoever shall be payable under this Policy for any loss or disability resulting wholly or partly in or

4. Karff v. Commercial Insurance Company of Newark, 8 Life Cas.2d 908 (Mass. App.Div.1970); Steffen v. Pacific Mutual Insurance Company, 442 S.W.2d 142 (Mo.Ct.App.1969); Kroll v. Equitable Life Assurance Society of the U. S., 7 Life Cas.2d 1440 (Co.Ct.Penn.1968).

from . . . (5) Accidental Bodily Injury or Sickness in cases where hospitalization is provided at the expense of any philanthropic, fraternal, eleemosynary or governmental institution or agency, or otherwise provided without cost to the person insured hereunder; . . . ."

This same contention was made and rejected with respect to a similar policy provision in Dunbar v. National Security Life and Accident Insurance Company, supra. In that case the policy excluded liability if the insured "was confined in an institution wheren he was entitled to services without cost to himself." It is apparent that exclusions of this nature are applicable to military and veterans hospitals or charitable institutions in which the insured might be provided services without any charge or cost to him or to another party on his behalf. The Henderson Memorial Hospital was not an eleemosynary or governmental institution, and it did not provide its services without cost to plaintiff. As heretofore held, plaintiff incurred an obligation to pay for the services. Payment of his bill was made on his behalf partially by the Medicare insurance program and partially by defendant and another of his private insurers.

■■■ It could hardly be said that any of these hospitalization payments came without cost to plaintiff. For the amount paid and to be paid by defendant, the plaintiff has remitted the annual premiums due under the policy, which at the time of trial were $330.40 per year. For the amount paid on his hospital bill by the Social Security Administration, it may be presumed that plaintiff paid his share of the social security taxes which partially finance Part A of Medicare, and it was stipulated that

he paid $3.00 per month for Part B coverage. Medicare is not a free or charitable program under which a governmental agency provides hospitalization services or expenses "without cost" to aged citizens. On the contrary, it is an insurance program established by the United States Government and administered by the Social Security Administration from trust funds to which the beneficiaries contribute through social security taxes and Part B premiums. The Act is entitled "Health Insurance for the Aged." Part A has the title "Hospital Insurance Benefits for the Aged," and Part B is entitled "Supplemental Medical Insurance Benefits for the Aged." The United States Government is the insurer under the program, and as such it agrees to pay specified hospital and medical expenses on behalf of the individual enrollees directly to those who furnish the services. The Medicare insurance program is similar in many respects to hospital insurance programs which are sold by many private insurance companies. Dunbar v. National Security Life and Accident Insurance Company, supra; Niles v. American Bankers Insurance Company, supra. Thus, as between the parties here, the fact that the United States Government, as insurer, paid on behalf of plaintiff a portion of his hospital expenses is the same as if they were paid by one of plaintiff's other private insurers. In neither event would this be a case "where hospitalization is provided at the expense of any . . . governmental institution or agency, or . . . without cost to the person insured hereunder . . . ." Therefore, defendant's point asserting non-liability because of the foregoing exclusionary provision is overruled.

Accordingly, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.