Frank A. **MARLATT**, Wayne Marlatt and Lois A. **Hatfield**, Personal Representative of the Estate of Edgar A. Marlatt, Appellant–Plaintiffs,

v.

**UNITED FARM BUREAU FAMILY LIFE INSURANCE COMPANY**, Successors to Hoosier Farm Bureau Life Insurance Company, Appellee–Defendant.

No. 16A01–9401–CV–3.

Court of Appeals of Indiana, First District.

Sept. 19, 1994.

Robert J. Eder, Earnest, Foster, Eder, Levi & Northam, Rushville, for appellant.

Sheila M. Flynn and James W. Treacy, Treacy, Grossman & Sullivan, Indianapolis, for appellee.

BAKER, Judge.

Today, we decide a question of first impression in Indiana: Is an insurance company required to pay its insured for medical expenses when Medicare covers the same expenses?

Appellants-plaintiffs Frank A. Marlatt, Wayne Marlatt and Lois A. Hatfield, Personal Representative of the Estate of Edgar A. Marlatt, (collectively Estate) contest the summary judgment in favor of the appellee-defendant United Farm Bureau Family Life Insurance Co. (UFB).

## FACTS

In 1953, Edgar purchased a hospital and surgical expense policy from Hoosier Farm Bureau Life Insurance Co, UFB's predecessor. In 1958, Edgar's original policy was converted to one issued by UFB. Edgar received medical treatment in 1990 and 1991, and tendered the bills to UFB seeking coverage under his policy. The pertinent portions of the UFB policy read:

*COVERAGE A.   HOSPITAL AND SURGICAL BENEFITS*

To pay the indemnities provided herein for loss due to hospital and surgical expenses . . .

1. Hospital Benefits—If such expenses are incurred during hospital confinement . . .

2. Surgical Benefits—Upon receipt of due notice and satisfactory proof that the insured has, while this coverage is in full force and effect, undergone an operation . . . the company will reimburse the amount charged for the operation but not to exceed the amount provided for such operation by the surgical schedule.

.     .     .     .     .

*EXCEPTIONS AND REDUCTIONS*

(Applicable to Coverages A and C)

This policy does not reimburse for expenses resulting from: (a) . . . nor for treatment or surgical care obtained without cost to the insured under the laws of any state or of the United States.

Record at 55, 58. Two of Edgar's bills from Methodist Hospital were for $9,821.63 and $6,043.75. Because some of the medical ex-

penses were paid by Medicare Part A,[1] UFB tendered payment on the Methodist bills only for portions not covered by Medicare Part A in the amounts of $592 and $628, claiming that the Exceptions clause excluded coverage. UFB also denied coverage on other bills that Edgar submitted.

Edgar filed a breach of contract action in 1991, alleging that he was entitled to receive reimbursement for all of his medical expenses. UFB answered by asserting that it had fulfilled its obligations under the policy because the Exceptions clause excluded coverage for expenses Edgar obtained without cost. UFB sought summary judgment "only on the issue of whether or not the Plaintiff is entitled, under the terms of the policy, for reimbursement of expenses paid by Medicare A." Record at 106, 109.

After Edgar died on September 27, 1992, the co-executors of his estate were substituted as plaintiffs in this action. On December 7, 1993, the trial court granted UFB's amended motion for summary judgment finding that UFB was not liable to reimburse the Estate for medical expenses paid on Edgar's behalf under Medicare Part A coverage.

### DISCUSSION AND DECISION

#### I. Indiana Trial Rule 56

As a preliminary matter, the Estate argues that we should consider all the issues raised by the amended complaint and not merely the issue of exclusion of UFB policy coverage where Medicare Part A payments were made. Some of Edgar's medical bills were paid by Medicare Part A, some under Medicare Part B, and others not covered at all. The Estate contends that the trial court's order does not limit its decision to the issue of Medicare Part A coverage. The Estate is mistaken.

The trial court's order granting summary judgment specifically restricts its finding of UFB's nonliability for reimbursement of medical expenses Medicare Part A paid on Edgar's behalf. The court's statement that "there are no genuine issues of material fact in dispute" refers only to the basis for the entry of summary judgment, and does not affect any other undecided grounds, such as Medicare Part B expenses and uncovered expenses that still remain before the trial court. Therefore, we are faced only with the question of whether UFB is liable for reimbursement of the portion of medical expenses Edgar incurred but that were paid by Medicare Part A.

■ The Estate also attacks the summary judgment by arguing that UFB failed to support its amended motion for summary judgment with admissible designated materials as required by Ind. Trial Rule 56(C). Because the trial court may rely only upon facts designated for summary judgment, the Estate posits that summary judgment was improper. See Perryman v. Huber, Hunt & Nichols, Inc. (1994), Ind.App., 628 N.E.2d 1240, 1243, trans. denied. Although it is preferable for designation of evidentiary matter supporting summary judgment to be within the motion itself, designation in the accompanying memorandum is acceptable. See Pierce v. Bank One–Franklin, N.A. (1993), Ind.App., 618 N.E.2d 16, 19, trans. denied (nonmovant's response incorporated movant's list of designated evidentiary matters and met T.R. 56(C)); see also Kissell v. Vanes (1994), Ind.App., 629 N.E.2d 878, 880 (lack of designation of evidentiary matters in motion or supporting memorandum failed to satisfy T.R. 56(C)). In its memorandum supporting summary judgment, UFB designated the applicable policy language and an affidavit of one of UFB's senior claims specialists which itemized Edgar's medical bills, the medicare coverage, and the UFB policy coverage for those bills. As discussed later, we find that the policy language sufficiently demonstrates that no material issues of fact exist and that UFB is entitled to summary judgment as a matter of law on the particular issue concerning Medicare Part A. Hence,

---

1. Title XVIII of the Social Security Act established the Medicare program in 1965. See 42 U.S.C. § 1395 et seq. Medicare Part A provides hospital insurance benefits for the aged and disabled. 42 U.S.C. §§ 1395c–1395i. Medicare Part B contains supplementary medical insurance benefits for the aged and disabled, which requires the payment of a monthly premium by the insured. 42 U.S.C. §§ 1395j–1395w.

UFB's designation of evidentiary material was not inadequate.

## II. Policy Exclusion

■ Finally, we address the substantive question: whether UFB is required to pay for Edgar's medical expenses that were covered by Medicare Part A. In reviewing the trial court's entry of summary judgment, we face the same issues as the trial court and apply the same standard of review. *Perryman*, 628 N.E.2d at 1243. The construction of an insurance policy is a question of law that is particularly appropriate for summary judgment when its terms are unambiguous. *Lexington Ins. Co. v. American Healthcare Providers* (1993), Ind.App., 621 N.E.2d 332, 336, *trans. denied.* In support of the trial court's entry of summary judgment, UFB contends that the Exceptions clause excludes the medical expenses paid by Medicare Part A since the services were "without cost" to Edgar. Conversely, the Estate argues that the policy only requires that the expenses be "incurred." Although Indiana has not had the opportunity to address this question, other states have confronted the issue. *See Black v. American Bankers Ins. Co.* (1972), Tex., 478 S.W.2d 434; *Appleman v. National–Ben Franklin Ins. Co.* (1978), 84 Cal. App.3d 1012, 149 Cal.Rptr. 117; *Niles v. American Bankers Ins. Co.* (1970), La.App., 229 So.2d 435, *writ refused*, 255 La. 479, 231 So.2d 394; *Steffen v. Pacific Mut. Life Ins. Co.* (1969), Mo.App., 442 S.W.2d 142.

Missouri determined that the insurance company was not liable under its policy for services that Medicare reimbursed. *Steffen*, 442 S.W.2d at 145; *see also Appleman*, 149 Cal.Rptr. at 118. In *Steffen*, the insurance policy language excluded reimbursement "for which no charge is made that the employee is required to pay." 442 S.W.2d at 143. Steffen argued that "required to pay" meant an "obligation to pay" and that Medicare coverage did not change the character of Steffen's obligation to pay the hospital for services

rendered. *Id.* at 144. The Missouri Court of Appeals rejected this argument because the hospital had agreed with the government not to charge individuals for services covered by Medicare. *Id.* at 145. Hence, Steffen could not be required to pay for those hospital services, and the insurance company was not liable under its policy. *Id.*[2]

■ Because we find that the *Steffen* exclusionary language of "not required to pay" is substantially similar to the "without cost" phrase here, we apply *Steffen's* reasoning. The Medicare laws require provider hospitals to agree not to charge the patient for services that Medicare Part A covers. 42 U.S.C. § 1395cc; *see Holle v. Moline Public Hosp.*, 598 F.Supp. 1017 (C.D.Ill.1984) (to qualify as participating provider, hospital must enter agreement with government not to charge individuals for services covered by Medicare). It is immaterial that UFB has not presented evidence of a particular agreement between the hospital and the government as one was required by law. The effect of the Medicare laws was that Edgar was relieved of any financial liabilities for Medicare Part A services, and he could not be compelled to pay for those services. *See Appleman*, 149 Cal.Rptr. at 118. Edgar obtained medical services that Medicare Part A covered without cost to him; thus, he comes within the UFB policy exclusion. *See id.; Steffen*, 442 S.W.2d at 145.

It is also of no moment that Edgar's policy was not an employee group policy as the one in *Steffen;* this is a difference without a distinction. In a last attempt to refute *Steffen*, the Estate suggests that because the policy was issued before the Medicare program was created, the parties did not contemplate the effect of Medicare and did not intend to exclude coverage when Medicare payments were made. We observe that the *Steffen* policy also was issued prior to the passage of the Medicare program, and we are of the opinion that such distinction has no

---

**2.** We acknowledge that Texas and Louisiana refused to follow *Steffen*, but we believe that the *Steffen* decision is better reasoned. *See Black v. American Bankers Ins. Co.* (1972), Tex., 478 S.W.2d 434; *Niles v. American Bankers Ins. Co.* (1970), La.App., 229 So.2d 435, *writ refused*, 255 La. 479, 231 So.2d 394. We find *Black* and *Niles* to be distinguishable in that those cases deal only with whether a patient under Medicare "actually incurs expenses" and do not discuss the requirement to pay feature.

bearing on this case. *See Steffen*, 442 S.W.2d at 143.

Next, the Estate denies that Edgar's medical treatment, for which Medicare Part A applied, was not obtained without cost to him since he paid self-employment taxes, a percentage of which paid for Medicare hospital insurance. We disagree that payment of self-employment taxes to fund Medicare Part A services equates with "cost" as used in the UFB policy.

 The provisions of an insurance contract are subject to the same rules of construction as other contracts, and construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Delaplane v. Francis* (1994), Ind. App., 636 N.E.2d 169, 171 (citation omitted). When an insurer limits coverage, all exceptions, limitations and exclusions must be plainly expressed. *Id.* If an insurance policy's language is clear and unambiguous, it must be given its plain and ordinary meaning. *Id.* The ordinary and accepted meaning of "cost" is "the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered: CHARGE, PRICE." *Johnson County Farm Bureau Co-op Ass'n v. Indiana Dept. of Revenue* (1991), Ind.Tax., 568 N.E.2d 578, 581, *aff'd*, Ind., 585 N.E.2d 1336 (quoting Webster's Third New International Dictionary 515 (1981)). In the context of medical insurance, cost generally refers to the amount charged for medical services rendered. Consequently, Edgar's payment of self-employment taxes over the years is outside the scope of this definition.

In support of our determination, we note that self-employment taxes for Medicare Part A funding is not considered by the Internal Revenue Service as a medical expense for purposes of medical expense deductions in computing income tax. *See Revenue Ruling* 66–216. That ruling distinguished between self-employment taxes paid to fund Medicare Part A services and optional premiums paid for Medicare Part B services. *Id.* Because Medicare Part B provides for the payment of supplemental premiums by patients at the patients' option, those premiums qualify for the medical expense deduction, but Medicare Part A that excises a mandatory tax upon all taxpayers does not qualify. *Id.* We find this rationale applicable here and hold that Edgar's portion of self-employment taxes for Medicare Part A did not constitute cost to him as defined in the UFB policy.

In conclusion, we affirm summary judgment and hold that UFB was not required to pay for Edgar's medical expenses that Medicare Part A covered.

Judgment affirmed.

ROBERTSON, J. and RATLIFF, Senior Judge, concur.