**James ELSTON, Individually and on Behalf of All Others Similarly Situated, Appellant,**

v.

**RESOLUTION SERVICES, INC., Appellee.**

No. 03–96–00414–CV.

Court of Appeals of Texas, Austin.

July 24, 1997.

Rehearing Overruled Aug. 28, 1997.

Mark L. Perlmutter, Perlmutter & Reagan, L.L.P., Austin, for Appellant.

Linda J. Burgess, Jack Johnson, Hughes & Luce, L.L.P., Austin, for Appellee.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

CARROLL, Chief Justice.

Appellant James Elston sued Appellee Resolution Services, Inc., for alleged violations of the Debt Collection Act (the Act). *See* Tex.Rev.Civ. Stat. Ann. arts. 5069–11.01 to 11.12 (West 1987 & Supp.1997). The district court granted Resolution Services summary judgment, from which Elston appeals. We will affirm the district court's judgment.

## THE CONTROVERSY

This dispute began when Elston fell behind on his credit card payments and Resolution Services attempted to collect the debt. At that time, the Act required debt collection letters to contain the street address of the collector. *See* Act of May 19, 1973, 63d Leg., R.S., ch. 547, § 5, 1973 Tex. Gen. Laws 1513 (Tex.Rev.Civ.Stat.Ann. art. 5069–11.05(e), since amended). While this lawsuit was pending in district court, the legislature amended the statute to require debt collec-

182

tion letters to contain a street address *or* a post office box and a phone number of the collector. *See* Tex.Rev.Civ. Stat. Ann. art. 5069–11.05(e) (West Supp.1997). Resolution Services sent Elston three letters. None contained Resolution Services' street address, but they did contain the post office box and toll-free phone number of Resolution Services.

Furthermore, the Act prohibited (and still does) businesses like Resolution Services from attempting to collect debts without having a surety bond filed with the secretary of state. *See* Tex.Rev.Civ. Stat. Ann. art. 5069–11.07A(e) (West Supp.1997). When it attempted to collect the debt from Elston, Resolution Services did not have a bond on file with the secretary of state. While this lawsuit was pending in district court, Resolution Services filed the required surety bond.

In response to Resolution Services' actions, Elston sued in district court, seeking $100 per alleged violation of the Act and seeking an injunction requiring Resolution Services to comply with the bond requirement in the future. Resolution Services moved for summary judgment, alleging: (1) it did not violate the street address requirement because the subsequent amendment to the Act made the inclusion of a post office box number and telephone number sufficient; (2) Elston failed to prove the omission of the street address rendered the letters fraudulent, deceptive, or misleading, as required by the Act; and (3) Elston failed to prove actual damages caused by the alleged violations, as required by the Act. Elston responded and moved for partial summary judgment, alleging: (1) the subsequent amendment to the Act was unconstitutional and therefore did not bring the letters into compliance with the Act; (2) he was not required to prove the alleged violations rendered the letters fraudulent, deceptive, or misleading; (3) he was not required to prove actual damages because the Act provided an automatic penalty for the alleged violations; and (4) in any event, he had produced evidence of actual damages. The trial court granted Resolution Services' motion for summary judgment and denied Elston's motion for partial summary judgment. The court did not, however, state the basis for its ruling.

Elston appeals the trial court's ruling in two points of error. He specifically challenges the ruling insofar as it pertains to his request for damages. He does not expressly challenge the ruling insofar as it pertains to his request for an injunction.

## STANDARD OF REVIEW

The standards of review of a summary judgment are well settled: (1) the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

A defendant seeking summary judgment based on a plaintiff's inability to prove his case must conclusively disprove at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). Only when the defendant disproves one of the essential elements of a cause of action does the plaintiff carry the burden of producing controverting evidence and raising a fact issue as to the negated element. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

Because the propriety of summary judgment is a question of law, we review the trial court's decision *de novo. See Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). When a trial court does not state the basis for its decision in its summary-judgment order, we must uphold the order if any of the theories advanced in the motion are meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989). Conversely, we must reverse the order if we find no valid legal basis in the motion. Because the trial court did not state the basis for its ruling, we will assume for purposes of this opinion that the court agreed with each of Resolution Services' contentions in its motion.

## DISCUSSION

In his first point of error, Elston challenges the district court's ruling as it relates to the alleged violation of the bond requirement. In his second point of error, Elston challenges the court's ruling as it relates to the alleged violations of the street address requirement. Elston raises virtually all of the issues argued in the summary-judgment proceedings under the two points of error; however, his arguments about actual damages are common to both points. Even if we assume that (1) the subsequent amendment was unconstitutional, (2) Resolution Services violated the applicable statute, and (3) Elston was not required to prove the alleged violations were fraudulent, misleading, or deceptive, Elston cannot recover for either alleged violation unless he prevails on his actual damages arguments. Because we can resolve the entire case by deciding the actual damages issues, we need not discuss the other aspects of Elston's points of error. For purposes of discussing the actual damages issues, we will assume without deciding that Elston's other arguments are sustainable.

Elston first contends the district court erred in granting summary judgment for Resolution Services on the basis that he was required to prove actual damages in order to recover under the Act. Elston sued under the section of the Act entitled "Civil remedies," which reads in relevant part:

(a) Any person may seek injunctive relief to prevent or restrain a violation of this Act and any person may maintain an action *for actual damages sustained as a result of a violation of this Act.*

*   *   *   *   *   *

(c) A person *who successfully maintains an action under this article* shall be awarded at least $100 for each violation of this Act.

Tex.Rev.Civ. Stat. Ann. art. 5069–11.10(a) (West 1987); Act of May 23, 1993, 73d Leg., R.S., ch. 813, § 2, 1993 Tex. Gen. Laws 3248 (Tex.Rev.Civ.Stat.Ann. art. 5069–11.10(c), since amended) (emphasis added). Elston argues subsection (c) provides a cause of action independent of subsection (a). He reasons, therefore, that a person who establishes a violation of the Act is automatically entitled to the measure of damages set forth in subsection (c), without regard to whether the person has suffered actual damages or otherwise successfully maintained an action under subsection (a).

Resolution Services, on the other hand, argues subsection (a) provides the only authority to sue under the Act. Subsection (c), according to Resolution Services, is a remedial provision applicable only when the requirements of subsection (a) are met.

No other court has addressed the question of whether recovery under article 5069–11.10(c) depends on success under article 5069–11.10(a). In construing a statute, we attempt to harmonize related provisions and give meaning and effect to the words the legislature used. *See Black v. American Bankers Ins. Co.,* 478 S.W.2d 434, 437 (Tex. 1972). The legislature limited the group of persons eligible for $100 under subsection (c) to those who successfully maintain an action under "this article," not "this subsection." The article referenced is article 5069–11.10, which includes *both* subsections (a) *and* (c). We hold subsection (c) effectively conditions recovery of the $100 award on successful maintenance of a suit under subsection (a). This interpretation harmonizes the two subsections of the article and gives effect to the legislature's choice of the word "article" as opposed to "subsection."

Elston argues his construction supports the policy behind the statute. Specifically, Elston contends imposition of an automatic minimum statutory penalty would coerce debt collectors to comply with the Act. That may be true. However, we must attempt to give effect to all the words in article 5069–11.10. When we do so, we are not convinced the legislature intended to impose an automatic minimum penalty unrelated to successful maintenance of a suit under subsection (a). Furthermore, our construction of the statute does not excuse errant debt collectors from paying penalties. On the contrary, our interpretation requires them to pay damages in excess of those actually suffered when the prevailing party does not suffer $100 worth

of damages. Moreover, persons who violate the Act are subject to criminal penalties from $100 to $500 under a different article. *See* Tex.Rev.Civ. Stat. Ann. art. 5069–11.09 (West 1987).

Elston also cites statutes from other jurisdictions to support his argument. *See* Fla. Stat. Ann. § 559.77 (West 1996);[1] Iowa Code Ann. § 537.5201 (West 1996).[2] We concede that other states may have written their debt-collection statutes more clearly than did Texas. However, other courts' constructions of those statutes does not in any way shed light on the proper construction of the Texas Act.

■ Elston next reasons that, even if recovery of the $100 award is conditioned on satisfaction of subsection (a), a person may satisfy subsection (a) without proving actual damages. This is a plausible argument, because subsection (a) authorizes suits for injunction. We need not answer the question of whether successful maintenance for a suit for injunction under subsection (a) gives rise to an award of $100 under subsection (c). The trial court denied Elston's request for an injunction, and Elston does not expressly challenge that denial. Even if he did, we would uphold the trial court's action. Elston admits Resolution Services filed a bond with the secretary of state while the lawsuit was pending in district court. The issue is, therefore, moot. *See Texas Parks & Wildlife Dep't v. Texas Ass'n of Bass Clubs*, 622 S.W.2d 594, 596 (Tex.App.—Austin 1981, writ ref'd n.r.e.). It does not fall within the exceptions to the mootness doctrine. *See General Land Office v. OXY U.S.A., Inc.*, 789

S.W.2d 569, 571 (Tex.1990). Because Elston could not recover under the injunction provision of subsection (a), the only way he could obtain the minimum award of $100 was to prove *some* actual damages.

■ Resolution Services argued in its summary-judgment motion that Elston failed to produce evidence of actual damages. Consequently, we must determine whether Elston produced controverting proof of actual damages.

The only proof Elston offered on the issue of actual damages was his personal affidavit. In the affidavit, Elston stated,

> The stress of my financial situation, my inability to pay creditors and debt collectors calling me and writing me about my debt affected my work performance and aggravated old knee and shoulders injuries. I experienced anxiety, sleeplessness and stress. It created stress in my marriage and other relationships. The efforts of Resolution Services, Inc. to collect the ... debts significantly contributed to my stress and anxiety, seriously upset my wife and me. When I learned that Resolution Services, Inc. did not even have the right to collect debt in Texas because they did not file a surety bond, I was stunned that a debt collector would break the law to attempt to collect my debt. I felt that Resolution Services, Inc. had taken advantage of me as a consumer. ...

These statements suggest Elston suffered actual damages as a result of his inability to pay his debts and Resolution Services' at-

---

1. The Florida provision Elston cites reads:

   A debtor may bring a civil action against a person violating the provisions of s. 559.72 in a court of competent jurisdiction of the county in which the alleged violator resides or has his principal place of business or in the county wherein the alleged violation occurred. Upon adverse adjudication, the defendant shall be liable for actual damages or $500, whichever is greater, together with court costs and reasonable attorneys' fees incurred by the plaintiff. Fla. Stat. Ann. § 559.77 (West 1996). Elston cites a Florida case for the proposition that a plaintiff need not recover actual damages to be entitled to statutory damages under this provision. *See Tester v. National Credit Exchange, Inc.*, 299 So.2d 46 (Fla.Dist.Ct.App.1974).

2. The Iowa provision Elston cites reads:

   The consumer, other than a lessee in a consumer rental purchase agreement, has a cause of action to recover actual damages and in addition a right in an action other than a class action to recover from the person violating this chapter a penalty in an amount determined by the court, but not less than one hundred dollars nor more than one thousand dollars, if a person has violated this chapter. ...
   Iowa Code Ann. § 537.5201 (West 1996). Elston cites an Iowa case for the proposition that a plaintiff need not recover actual damages to be entitled to statutory damages under this statute. *See Public Finance Co. v. Van Blaricome*, 324 N.W.2d 716, 725 (Iowa 1982).

tempt to collect the debts. They also reveal Elston was subjectively surprised to learn that Resolution Services was not in compliance with the bond requirement when it attempted to collect the debts.

█ The statements do not, however, reveal Elston suffered actual damages *as a result of* Resolution Services' failure to file a bond or its failure to put a street address on its letters. That Elston was "stunned" does not in this context establish he suffered a compensable injury. *Cf. Parkway v. Woodruff*, 901 S.W.2d 434, 442–45 (Tex.1995) (expressions of emotions such as anger, frustration, and vexation are not enough to establish mental anguish damages under the DTPA). Elston alleges various physical and psychological injuries but does not link them to the actual violations of which he complains. The Act requires such a link. It provides a cause of action for "actual damages sustained *as a result of a violation of this Act.*" Tex.Rev. Civ. Stat. Ann. art. 5069–11.10(a) (emphasis added.) Because Elston failed to establish conclusively in his response to the motion for summary judgment that he suffered actual damages related to the alleged violations, he failed to carry his burden of proof in the summary-judgment proceeding. The trial court did not err in granting Resolution Services' motion and denying Elston's motion. We overrule both of Elston's points of error.

### CONCLUSION

We have held that article 5069–11.10(c) provides a minimum amount of damages for parties who successfully prove violations of the Debt Collection Act under article 5069–11.10(a). We reserve the question of whether subsection (c) damages are available to a party who obtains an injunction under subsection (a), because the facts of this case do not require us to address that issue. We have also held that Elston did not provide summary-judgment proof that he suffered actual damages resulting from Resolution Services' alleged violation of the Act. We, therefore, affirm the judgment of the trial court.