Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion issued April 20,
2006






 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-04-01096-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



THE CITY OF GALVESTON, TEXAS AND LANDRY’S RESTAURANTS,
INC., Appellants

 

V.

 

THE TEXAS GENERAL LAND OFFICE, Appellee

 

 



On Appeal from the 122nd District Court








Galveston County, Texas

Trial Court Cause No. 03CV1419

 

 

 



O P I N I O N

 

          This
declaratory judgment action requires us to construe Texas Local Government Code
section 307.042(e),[1] which
enabled the City of Galveston (“the City”) to sell the Flagship Pier and Hotel—property
the Legislature requires be used for public park purposes—to Landry’s
Restaurants, Inc. (“Landry’s”).  The City
and Landry’s contend the trial court erred in interpreting the statute to allow
the General Land Office (“GLO”) to assess an annual lease payment for Landry’s
use of the State-owned submerged land beneath the pier and hotel.  We agree with the trial court’s determination
and therefore affirm.

Background

          In
1941, the Legislature granted to any coastal city with a population over 60,000
the right to use and occupy, for public park purposes, the State-owned
tidelands, water, and bed of the Gulf of Mexico (“State-owned submerged land”).  See Act of Feb. 11, 1941, 47th Leg.,
R.S., ch. 7, 1941 Tex. Gen. Laws 10, 11 (amended 2001) (current version at Tex. Loc. Gov’t Code Ann. § 307.001
(Vernon 2005)).  The statute gave
eligible cities the right to erect a pier over the State-owned submerged land,
and further delineated the types of facilities that the Legislature deemed
suitable to build on the pier: a theatre, restaurant, convention hall, dance
hall, aquarium, fishing platform, exhibition hall, stadium for aquatic sports,
spaces and platforms for concessions, walkways, toilet facilities, and resting
facilities for the comfort of the public. 
See Act of Feb. 11, 1941, 47th Leg., R.S., ch. 7, 1941 Tex. Gen.
Laws 10, 12, amended by Act of May 24, 1961, 57th Leg., R.S., ch. 525,
1961 Tex. Gen. Laws 1166, 1167, amended by Act of Apr. 30, 1987, 70th
Leg., R.S., ch. 149, 1987 Tex. Gen. Laws 707, 1091–92.  The statute authorized eligible cities to
borrow money, issue negotiable bonds, and levy taxes to defray the costs both of
building the pier and acquiring any privately owned land to be used in
connection with the pier.  See Act
of Feb. 11, 1941, 47th Leg., R.S., ch. 7, 1941 Tex. Gen. Laws 10, 12 (amended 1987)
(current version at Tex. Loc. Gov’t Code
Ann. § 307.041(a) (Vernon 2005)). 
As security for any bonds issued, the statute enabled eligible cities to
mortgage the pier and any improvements thereon, and under the terms of any such
mortgage, to grant to the purchaser under sale or foreclosure a franchise to
operate the properties purchased for a 35-year period.  See Act of Feb. 11, 1941, 47th Leg.,
R.S., ch. 7, 1941 Tex. Gen. Laws 10, 13, amended by Act of May 20, 1965,
59th Leg., R.S., ch. 671, 1965 Tex. Gen. Laws 1534, 1534, amended by Act
of May 11, 2001, 77th Leg., R.S., ch. 598, 2001 Tex. Gen. Laws 1139, 1140.  In 1942, pursuant to this statute, the City
constructed a pier commonly known as the Flagship Pier.

          In
1961, the Legislature amended the statute by including, among other things,
authorization to build a hotel on the pier with bond funds.  See Act of May 24, 1961, 57th Leg.,
R.S., ch. 525, 1961 Tex. Gen. Laws 1166, 1167 (amended 1987) (current version
at Tex. Loc. Gov’t Code Ann. §
307.021 (Vernon 2005)).  Four years
later, the Legislature amended the statute again to extend the permissible
franchise period pursuant to a foreclosure sale from thirty-five years to
seventy-five years.  See Act of
May 20, 1965, 59th Leg., R.S., ch. 671, 1965 Tex. Gen. Laws 1534, 1534 (amended
2001) (current version at Tex. Loc.
Gov’t Code Ann. § 307.042(c) (Vernon 2005)).  The City used bond proceeds to build the
Flagship Hotel on the pier.  Eventually,
the City retired the bonds it had issued for constructing the hotel and pier.

          In
September 2000, the Galveston City Council adopted a resolution asking the
Legislature to amend the statute to enable the City to sell the Flagship Pier
and Hotel (together the “Flagship Property”). 
Galveston, Tex., City Council Resolution 00-045 (Sept. 14, 2000).  In 2001, the Legislature amended section
307.042 of the statute to add the following provision:

The municipality may sell the [Flagship Property] if
no bonded indebtedness remains outstanding. 
If the municipality sells the property, the General Land Office may
grant to the purchaser a lease of the state-owned tideland, water, and bed
beneath the property or, if necessary, a larger area for a period of not more
than 99 years after the purchase.  The
purchaser and the purchaser’s heirs, successors, and assigns have the same
right of use and occupancy to the state-owned tideland, water, and bed as is
granted to the municipality under this chapter. 
On termination of that period or on cessation of use of the property for
that purpose, the right of use and occupancy reverts to the municipality.

 

Act of May 11, 2001, 77th Leg., R.S.,
ch. 598, 2001 Tex. Gen. Laws 1139, 1140 (codified at Tex. Loc. Gov’t Code Ann. § 307.042(e) (Vernon 2005)).

          The
City subsequently sold the Flagship Property to Landry’s.  Following the sale, the GLO sought to enter
into a lease with Landry’s for the State-owned submerged land beneath the Flagship
Property.  Landry’s and the City
(together “appellants”) responded by suing for a declaratory judgment,[2] alleging
that the statute precludes the GLO from assessing an annual rental payment
against Landry’s because the City had never paid rent to the GLO for its use
and occupancy of the State-owned submerged land.  After considering the parties’ cross-motions
for summary judgment, the trial court granted the GLO’s motion and denied
appellants’ motion.  This appeal
followed.

Standard of Review

          We
review declaratory judgments under the same standards as other judgments and
decrees.  Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997); City
of Galveston v. Giles, 902 S.W.2d 167, 170 (Tex. App.—Houston [1st Dist.]
1995, no writ).  We look to the procedure
used to resolve the issue at trial to determine the standard of review on
appeal.  Giles, 902 S.W.2d at
170.  Here, because the trial court
resolved the case on competing motions for summary judgment, we review the
propriety of the declaratory judgment under the same standards that we apply in
reviewing a summary judgment.  Lidawi
v. Progressive County Mut. Ins. Co., 112 S.W.3d 725, 730 (Tex. App.—Houston
[14th Dist.] 2003, no pet.).

Our review of a summary judgment is
de novo.  Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  Under the traditional standard for summary
judgment, the movant has the burden to show that no genuine issue of material
fact exists and that judgment should be granted as a matter of law.  Tex.
R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999). 
We view all evidence in a light favorable to the nonmovant and indulge
every reasonable inference in the nonmovant’s favor.  Provident Life, 128 S.W.3d at
215.  When both sides move for summary
judgment and the trial court grants one motion and denies the other, we
consider both motions, their evidence, and their issues, and we may render the
judgment that the trial court should have rendered.  See CU Lloyd’s of Tex. v. Feldman, 977
S.W.2d 568, 569 (Tex. 1998).

 

Analysis

          Statutory
interpretation is a question of law.  In
re Canales, 52 S.W.3d 698, 701 (Tex. 2001). 
Our primary goal in interpreting a statute is to ascertain and to
effectuate the Legislature’s intent.  Id.
at 702.  In doing so, we begin with the
statute’s plain language.  Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001); Fitzgerald v.
Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865–66 (Tex.
1999).  We begin with the plain language
because we assume that the Legislature tried to say what it meant; therefore,
the statute’s words should be the surest guide to the Legislature’s
intent.  Fitzgerald, 996 S.W.2d at
866.

          In
ascertaining legislative intent, we do not confine our review to isolated
statutory words, phrases, or clauses; rather, we examine the entire act.  Meritor Auto., Inc. v. Ruan Leasing Co.,
44 S.W.3d 86, 90 (Tex. 2001); see also Tex.
Gov’t Code Ann. § 311.011(a) (Vernon 2005) (instructing courts to read
words and phrases in context).  We
construe words and phrases according to the rules of grammar and common usage.  Tex.
Gov’t Code Ann. § 311.011(a). 
Moreover, words and phrases that have acquired a technical or particular
meaning must be construed accordingly.  Id.
§ 311.011(b).

The Code Construction Act lists
factors that may be considered in construing a statute, whether or not the
statute is ambiguous on its face.  Id.
§ 311.023.  These factors include, among
other things, (1) the statute’s objectives, (2) the circumstances under which
the statute was enacted, (3) the statute’s legislative history, (4) former
statutory provisions, and (5) the consequences of a particular
construction.  Id. §
311.023(1)–(7).  We presume that the
Legislature intended a just and reasonable result.  Id. § 311.021(3).

The Statute

          Local
Government Code section 307.042(e) provides as follows:

The municipality may sell the property described by
Subsection (b)[3] if no
bonded indebtedness remains outstanding.[4]  If the municipality sells the property,
the General Land Office may grant to the purchaser a lease of the state-owned
tideland, water, and bed beneath the property or, if necessary, a larger area
for a period of not more than 99 years after the purchase.  The purchaser and the purchaser’s heirs,
successors, and assigns have the same right of use and occupancy to the
state-owned tideland, water, and bed as is granted to the municipality under
this chapter.  On termination of that
period or on cessation of use of the property for that purpose, the right of
use and occupancy reverts to the municipality.

 

Tex. Loc.
Gov’t Code Ann. §
307.042(e) (emphasis added).

          Appellants
rely on the portion of the statute that states “[t]he purchaser . . . ha[s] the
same right of use and occupancy to the state-owned tideland, water, and bed as
is granted to the municipality under this chapter.”  Id. 
Appellants urge that this statutory provision allows Landry’s to use and
occupy the State-owned submerged land beneath the pier without paying rent to
the GLO because the GLO did not charge the City rent for more than fifty years,
and the statute gives the Flagship purchaser “the same right of use and
occupancy” as the City.

Plain Language and Legislative
History

          Appellants’
contention that the phrase “the same right of use and occupancy” as the City imposes
rent-free “use and occupancy” of the State-owned submerged land is not
supported by either the plain language or the legislative history of section
307.042(e), when read together with the remainder of the statutory provision.  The amended statute prefaces the right of
occupancy description with the corresponding phrase that the GLO “may grant to
the purchaser a lease” of the State-owned submerged land for a term not to
exceed ninety-nine years, a provision not found in the earlier version of the
statute.  Id.  The amended statute thus contemplates that
the GLO may require consideration, namely rent, in exchange for “the same right
of use and occupancy.”  See Black’s Law Dictionary 898 (7th ed.
1999) (defining “lease” as “[a] contract by which a rightful possessor of real
property conveys the right to use and occupy that property in exchange for
consideration, usu. rent”).  The City
never had any lease arrangement with the GLO, but the amendment authorizes one.  Moreover, the statute does not require
the GLO to grant a lease; rather, the GLO “may grant” it, conferring the
latitude to the GLO to negotiate a bargained-for agreement.  Tex.
Loc. Gov’t Code Ann. § 307.042(e).

Similarly, the legislative history does
not indicate that the Legislature intended for the Flagship purchaser to enjoy
rent-free use of the State-owned submerged land beneath the pier.  Specifically, the bill analysis prepared by
the House Research Organization—the only legislative history for section
307.042(e)—states as follows:

HOUSE RESEARCH ORGANIZATION DAILY FLOOR REPORT

 

Allowing a 99-year lease for the Flagship Hotel in
Galveston

 

. . . .

 

In 1965, the 59th Legislature granted the City of
Galveston a 75-year lease for the state-owned submerged land under the city
pier that extends out into the Gulf of Mexico.[5]  The city issued bonds and sold them to a
developer, who built the Flagship Hotel. 
The bonds were retired in 25 years. 
The City owns the hotel.  The
authority for the project is contained in Local Government Code, ch. 307, which
applies only to the Flagship Hotel in the City of Galveston, based on the
description of the land and other features.

 

. . . .

 

SB 673 is needed to support the city of Galveston in
its sale of this historic coastal property. 
The Flagship Hotel in Galveston is in need of serious repairs and
improvements, and the city would like to sell the property to a developer for
redevelopment.  Developers have been uninterested,
however, in buying the hotel and investing the money for these improvements
when they would have only 34 years of the original 75-year lease to recoup
their investment.  SB 673 would allow the
GLO to grant a 99-year lease to a developer to make this sale possible.  The GLO would not be required to grant the
lease.  If granted, the state would
benefit from the continued annual lease payments, and the city would
benefit from the investment.

 

House
Research Organization, Bill Analysis, Tex. S.B. 673, 77th Leg., R.S. 51–52 (2001) (emphasis
added).  Of course, the City had not been
making annual lease payments to the GLO, and the bill analysis is therefore
mistaken in its assertion that the State would benefit from continued
annual lease payments.  Importantly,
however, instead of indicating that the Flagship purchaser would enjoy
rent-free use of the State-owned submerged land, the bill analysis contemplates
a lease in exchange for the purchaser’s right to use and occupy the State-owned
submerged land.  Hence, appellants’
assertion that Landry’s is entitled to rent-free use and occupancy is not borne
out by the legislative history of the statute.

          Appellants
further contend the city council resolution that prompted the Legislature to
enact section 307.042(e) supports their position.  The resolution states as follows:

The City Council of the City of Galveston, Texas,
hereby respectfully requests the Texas Legislature to amend Chapter 307 of the
Texas Local Government Code to re-establish the easement to the submerged land
underlying the pier for a 99 year period in order to facilitate the City’s
ability to sell the Flagship pier and hotel in order for it to be improved and
enhanced as a major tourist attraction and to provide a potential purchaser
with the ability to substantially improve the property for its appropriate long
term use.

 

Galveston, Tex., City Council
Resolution 00-045 (Sept. 14, 2000). 
Appellants maintain that continued rent-free use of the State-owned
submerged land was a necessary incentive to attract buyers who would be willing
to pay for substantial improvements to the Flagship Property.

          The
bill analysis, however, clarifies that potential developers were uninterested
in buying the Flagship hotel and thereafter investing substantial sums to
improve the property “when they would have only 34 years of the original
75-year lease to recoup their investment.” 
House Research Organization, Bill
Analysis, Tex. S.B. 673, 77th Leg., R.S. 52 (2001).  It therefore appears that the impetus behind
the legislation was to enable the GLO to grant the Flagship purchaser a 99-year
lease, thereby alleviating the problem by giving the purchaser an additional
sixty-five years to recoup its investment. 
In other words, the legislative history is concerned not with whether a
potential buyer would be unwilling to pay for improvements to the fixtures
because it might also have to pay rent for the land beneath, but rather whether
a potential buyer would be unwilling to pay for improvements to the fixtures
because the buyer would have only a short time to recoup its investment before
its right of occupancy lapsed.  This
emphasis on lease length, as opposed to lease payments, is
reflected in the subject line of the bill analysis (“[a]llowing a 99-year lease
for the Flagship Hotel in Galveston”), in the text of the bill analysis as
previously discussed, and in the city council resolution on which appellants
rely.  House
Research Organization, Bill Analysis, Tex. S.B. 673, 77th Leg., R.S.
51–52 (2001); Galveston, Tex., City Council Resolution 00-045 (Sept. 14,
2000).  The resolution does not mention
rent-free use of the State-owned submerged land, but rather asks the
Legislature “to re-establish the easement . . . for a 99 year period in
order to facilitate the City’s ability to sell the Flagship pier and hotel in
order for it to be improved and enhanced as a major tourist attraction and
to provide a potential purchaser with the ability to substantially improve the
property for its appropriate long term use.”  Galveston, Tex., City Council Resolution
00-045 (Sept. 14, 2000) (emphasis added).

 

Harmonizing the Statutory Provisions

          The
two statutory provisions at issue in this case may easily be harmonized.  See Black v. Am. Bankers Ins. Co., 478
S.W.2d 434, 437 (Tex. 1972) (“It is a cardinal rule of statutory construction
that all sections, words and phrases of an entire act must be considered
together; every provision should be construed with every other portion to
produce a harmonious whole; and one provision will not be given a meaning out
of harmony or inconsistent with other provisions, although it might be
susceptible of such construction if standing alone.”).  The first provision, “[i]f the municipality
sells the property, the General Land Office may grant to the purchaser a lease
of the state-owned tideland, water, and bed beneath the property of, if
necessary, a larger area for a period of not more than 99 years after the
purchase[,]” means exactly what it says. 
Tex. Loc. Gov’t Code Ann.
§ 307.042(e).  In the event the City sells
the Flagship Property, the GLO may, but is not required to, grant a 99-year
lease to the purchaser.  The lease covers
the State-owned tideland, water, and bed already occupied by the City, and may
be extended to cover a larger area if necessary.

          The
second provision, “[t]he purchaser . . . ha[s] the same right of use and
occupancy to the state-owned tideland, water, and bed as is granted to the
municipality under this chapter[,]” means that the GLO may not restrict the Flagship
purchaser’s use of the State-owned submerged land to anything less than the
manner in which the City had been using the land.  Id. 
Nor is the GLO required, in negotiating a lease with the purchaser, to
allow the purchaser to make greater use of the submerged land than that made by
the City.  In other words, this statutory
provision contemplates that the Flagship purchaser has the right to continue to
use and occupy the State-owned submerged land as a public park, in the same
manner as the City had done for the past fifty years.  Any consideration that the purchaser must pay
for that right is a separate matter entirely.

Rental Payments

          Appellants
concede that section 307.042(e) permits the GLO to enter into a lease with the Flagship
purchaser.  Appellants assert, however,
that the GLO should not be allowed to charge rent pursuant to that lease
because section 307.042(e) does not expressly authorize the GLO to charge rent.

Appellants’ argument fails for several
reasons.  First, in interpreting
statutory language, “[w]ords and phrases shall be read in context and construed
according to the rules of grammar and common usage.”  Tex.
Gov’t Code Ann. § 311.011(a).  As
we previously discussed, in common usage, the term “lease” implies that rental
payments may be the required consideration provided in exchange for the right
to use and occupy certain property.  See
Black’s Law Dictionary 898 (7th
ed. 1999) (defining “lease” as “[a] contract by which a rightful possessor of
real property conveys the right to use and occupy that property in exchange for
consideration, usu. rent”); Merriam
Webster’s Collegiate Dictionary 708 (11th ed. 2003) (defining “lease” as
“a contract by which one conveys real estate, equipment, or facilities for a
specified term and for a specified rent”); 8 Oxford
English Dictionary 769 (2d ed. 1989) (defining “lease” as “[a] contract
between parties, by which the one conveys lands or tenements to the other for
life, for years, or at will, usually in consideration of rent or other
periodical compensation”).  Thus, the
commonly used and understood meaning of “lease” encompasses the concept of
rental payments.  While the City benefits
from a private entity’s willingness to improve its distressed fixtures, section
307.042(e) does not preclude the GLO from seeking rent, as part of a lease
agreement, in exchange for the use of State-owned submerged land.

Second, the legislative history
presumes that the GLO will charge rent in the event it decides to enter into a
lease with the Flagship purchaser.  Specifically,
the bill analysis states as follows: “The GLO would not be required to grant
the lease.  If granted, the state would
benefit from the continued annual lease payments . . . .”  House
Research Organization, Bill Analysis, Tex. S.B. 673, 77th Leg., R.S. 52
(2001).  Hence, the legislative history
indicates that the Legislature intended the term “lease” to encompass rental
payments.

Finally, “legislative grants of
property, rights, or privileges must be construed strictly in favor of the
state on grounds of public policy, and whatever is not unequivocally granted in
clear and explicit terms is withheld.”  Empire
Gas & Fuel Co. v. State, 121 Tex. 138, 158, 47 S.W.2d 265, 272 (1932).  Here, with no express provision precluding
the GLO from charging rent for the use of State-owned submerged land—either to
Landry’s or to the City as its predecessor—we will not impute such a
restriction.

* * *

Local Government Code section
307.042(e) authorizes the GLO to require the Flagship purchaser to enter into a
lease for the State-owned submerged land beneath the pier.  In the event the GLO decides to lease the
land, nothing in the statute restricts the GLO from seeking consideration in
the form of rental payments for the right to use and occupy the land.  The legislative history of section 307.042(e)
further indicates that the Legislature intended for the GLO to assess an annual
lease payment.  This interpretation of
the statute comports with the common usage of the term “lease,” which
encompasses the concept of rental payments as among the forms of consideration
offered in exchange for the right to use and occupy certain property.  Moreover, this interpretation may be
harmonized with the “same right of use and occupancy” language of the statute
by construing the latter to mean simply that the purchaser may continue to use
the Flagship Property in the same manner in which the City had used it—as a
public park.  Accordingly, we conclude
that, pursuant to section 307.042(e), the GLO may require Landry’s to enter
into a lease, with annual rental payments, for the right to use and occupy the
State-owned submerged land beneath the Flagship Property.[6]

Conclusion

          We
affirm the judgment of the trial court.

          

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Taft,
Higley, and Bland.











[1] See Tex. Loc. Gov’t Code Ann. § 307.042(e)
(Vernon 2005).





[2] See Tex. Civ. Prac. & Rem. Code Ann. §§
37.001–.011 (Vernon 1997 & Supp. 2005) (Uniform Declaratory Judgments Act).

 

 





[3] Subsection (b) of the statute describes the Flagship Property.  See Tex.
Loc. Gov’t Code Ann. § 307.042(b) (Vernon 2005).

 





[4] The parties agree that no bonded indebtedness remains
outstanding.





[5] The bill analysis misstates that the 59th Legislature
granted a 75-year lease to the City. 
Rather, as we previously explained, the 1965 statute provided that, as
additional security for any bonds issued by the City and secured by a mortgage
of the pier, the City was allowed to “grant to the purchaser under sale or
foreclosure thereunder a franchise to operate the properties purchased for a
period of not over seventy-five (75) years after the purchase thereof.”  Act of May 20, 1965, 59th Leg., R.S., ch.
671, 1965 Tex. Gen. Laws 1534, 1534 (amended 2001) (current version at Tex. Loc. Gov’t Code Ann. § 307.042(c)
(Vernon 2005)).





[6] The GLO further contends that the permanent school
fund provision of the Texas Constitution compels a determination that the GLO
may charge rent for the Flagship purchaser’s use of the State-owned submerged
land beneath the pier.  See Tex. Const. art. VII, §§ 2, 4, 5.  In light of our holding that section
307.042(e) permits the GLO to require Landry’s to pay rent for use of the
submerged land, we need not consider the GLO’s argument that a contrary interpretation
of section 307.042(e) would be unconstitutional.