EVAN'S WORLD TRAVEL,
INC., Appellant,

v.

Paula ADAMS and Marshall
Pro–Travel, Appellees.

No. 06–97–00057–CV.

Court of Appeals of Texas,
Texarkana.

Argued May 21, 1998.

Decided Aug. 13, 1998.

Rehearing Overruled Sept. 1, 1998.

Gregory P. Grajczyk, Harbour, Smith, Harris, Longview, for appellant.

Bailey c. Moseley, Moseley and Davis, Associates, Marshall, for Marshall Pro–Travel.

Sam R. Moseley, Marshall, for Paula Adams.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Evan's World Travel (Evan's Travel) brought suit against a former employee, Paula Adams (Adams), to enforce a covenant not to compete. The trial court found that the covenant was not enforceable. In addition, the trial court awarded attorney's fees to Adams and Adams' subsequent employer, Marshall Pro–Travel (Pro–Travel), an intervenor in the suit.

Evan's Travel brings fourteen points of error. Issues presented include whether the trial court erred in determining that the covenant not to compete was unenforceable and in finding that: (1) the employment contract was terminable at will; (2) the covenant not to compete was not ancillary to an otherwise enforceable agreement; (3) Evan's Travel sought to enforce the agreement to a greater extent than necessary; (4) Evan's Travel knew that the geographical area restrictions were not reasonable; and (5) the primary purpose of the covenant was to restrain trade. Remaining points challenge the legal and factual sufficiency to support various findings by the trial court. Finally, Evan's Travel asserts that the trial court erred in allowing Pro–Travel to intervene and in awarding attorney's fees to both Adams and Pro–Travel for purposes of appeal.

## I. FACTS

In September 1993, Paula Adams, a travel agent with ten years of experience, met with Evan Shelan, the owner of Evan's World Travel, to discuss employment as a travel agent with his company. At the time of Adams' interview, Shelan operated offices in Longview, Marshall, and Kilgore, Texas. At this initial meeting, Shelan explained to Adams that a noncompetition agreement would be necessary between the two as an express condition of her employment. Adams agreed to this condition. She began working for Evan's Travel in October 1993 and, shortly after beginning work, signed the employment agreement which contained the noncompete clause.

The agreement purported to set a term of employment for three years. The agreement

also stated that Evan's Travel would share confidential information with Adams. In return, Adams agreed not to disclose such confidential information or take any of Evan's Travel's documents upon termination of the term of employment. Adams also agreed not to engage or participate in any business that would be in competition with Evan's Travel for a period of three years after she left Evan's Travel. This agreement encompassed the geographical region of Harrison and Gregg counties, the state of Texas, or any state in which Evan's Travel conducted business during the term of employment. Further, Adams agreed not to call on, solicit, or take away Evan's Travel's customers for the same three-year period.

Adams was placed at the Marshall, Texas, office in Harrison County and performed well for Evan's Travel. She was typically one of the top producers at the travel agency. Her responsibilities included servicing existing Evan's Travel customers and developing new ones. She had access to customer files and information and was trained by Evan's Travel in its own business protocols and office procedures. At the time she left Evan's Travel, Adams was the manager of the Marshall office.

On October 3, 1996, Adams resigned from Evan's Travel and went to work for Marshall Pro–Travel, a new competing travel agency in Marshall. Evan's Travel experienced a significant drop in business after Adams' departure. Evan's Travel sent a letter to Adams insisting that she honor the noncompetition clause of the employment agreement. Adams refused. Evan's Travel then filed this lawsuit seeking a declaration that the noncompetition agreement and related restricted covenants were valid and enforceable. Evan's Travel also sought an order preventing Adams from competing with it for the three-year period contained in the employment agreement.

A bench trial on the merits was held on February 10, 1997. The trial court held for Adams and awarded attorney's fees to both Adams and Pro–Travel. Evan's Travel appealed.

## II. ANALYSIS

### A. Standard of Review

When a party makes challenges to the legal sufficiency of the evidence following a bench trial, where findings of fact and a complete clerk's record are available, the trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards as are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury finding. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.). A party having the burden of proof, in attempting to overcome an adverse fact finding as a matter of law, must surmount two hurdles. First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). When reviewing the trial court's findings to determine the factual sufficiency of the evidence, this Court must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We may also review the conclusions of law drawn from the trial court's findings to determine their correctness. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e).

### B. Covenant Not to Compete

The legislature enacted the Covenants Not to Compete Act in 1989, which largely supplanted the common-law development of this area of law up to that time. TEX. BUS. & COM.CODE ANN. §§ 15.50, et seq. (Vernon Supp.1998). A covenant not to compete is a restraint of trade and will not be enforced unless it is reasonable. *Travel Masters, Inc. v. Star Tours, Inc.,* 827 S.W.2d 830, 832 (Tex.1991). A covenant not to compete is enforceable if (1) it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made, and (2)

the limitations of time, geographical area, and scope of activity are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. TEX. BUS. & COM. CODE ANN. § 15.50. The burden of proof lies with the promisee-the employer-to demonstrate that the covenant meets the statutory criteria. TEX. BUS. & COM.CODE ANN. § 15.51; *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

In the case at bar, the trial court found that the agreement was not ancillary to an otherwise enforceable agreement. Evan's Travel challenges this conclusion and the findings which support it. In order to analyze this issue, we must make two initial inquiries: (1) Is there an otherwise enforceable agreement? and (2) Is the covenant not to compete ancillary to or part of that agreement at the time the agreement was made? *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 644 (Tex.1994); *see* TEX. BUS. & COM.CODE ANN. § 15.50.

### 1. *Is this an otherwise enforceable agreement?*

The first step in this analysis is to determine whether an otherwise enforceable agreement existed between Adams and Evan's Travel. An employment at will relationship is not an otherwise enforceable agreement. *Light*, 883 S.W.2d at 644; *Travel Masters, Inc.*, 827 S.W.2d at 832. The trial court found that Adams was an at-will employee because the trial court determined that the employment contract between Adams and Evan's Travel was terminable at will by either party.

Texas has long followed the employment at will doctrine which allows either the employer or employee to terminate the employment relationship at any time for any reason. *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex.1993); *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888). In order to alter the employment at will presumption, a writing which attempts to alter the presumption must, "in a meaningful and special way," limit the employer's right to terminate the

employment at will. *Lee–Wright, Inc. v. Hall*, 840 S.W.2d 572, 577 (Tex.App.-Houston [1st Dist.] 1992, no writ) (citing *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.App.-Beaumont 1987, writ ref'd n.r.e.)). In such an employment contract, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502–03 (Tex. 1998).

The pertinent part of the employment agreement between Adams and Evan's Travel reads as follows:

5. **Term**. The "Term of Employment," as used herein, shall mean a period commencing Nov. 2, 1993 and ending on the third anniversary of such date (the "Ending Date"); *provided however* that the occurrence of any of the following prior to the Ending Date shall result in the immediate termination of the Term of Employment, but shall not result in the termination of this Agreement:

(i) the termination by the Employer of the Term of Employment for any reason, including, but not limited to, *the commission by the Employee of any act constituting a dishonest or other act of material or a fraudulent act or a felony under the laws of any state or of the United States to which the Employer or Employee is subject, (and act results or is intended to result directly or indirectly in the Employee's substantial gain or personal enrichment to the detriment of the Employer); or*

(ii) the death of the Employee; or

(iii) the failure of the Employee to perform her duties hereunder.

Employee shall be on a probationary employment period ("Probationary Period") of ninety (90) days under which Employer has the sole right to terminate Employee without cause.

Evan's Travel cites two reasons for disagreeing with the trial court's conclusion that this agreement failed to alter the at-will presumption. First, Evan's Travel argues that

the agreement created an employment contract for a term of years. Second, Evan's Travel argues that the agreement created a "discharge for cause only" employment contract.

As for Evan's Travel's first argument, the agreement does purport to set a term of employment for three years. The employment provision of the contract provides the dates of employment, Adams' monthly compensation, and a stated term of employment of three years. Generally, once the parties have agreed to a term of service, the employee cannot be fired except for good cause. *AccuBanc Mortgage Corp. v. Drummonds*, 938 S.W.2d 135, 142 (Tex.App.-Fort Worth 1996, writ denied) (citing *Lee–Wright, Inc.*, 840 S.W.2d at 577–78). However, Adams argues that Section 5 and 5(i) of the agreement allows Evan's Travel to terminate the employment relationship "prior to the Ending Date" for "any reason," thus creating an at-will employment relationship, despite other indications of alterations of Adams' at-will status.

Evan's Travel also asserts that the agreement created a "for cause" employment contract because the contract allows only for termination without cause during the initial ninety-day probationary period and, therefore, it logically follows that Adams could only be fired for "any reason" which constituted a "for cause" reason after the ninety-day period. As additional support for this position, Evan's Travel argues that the list of reasons given in the agreement in Section 5(i) are examples of reasons to terminate Adams which show that only "for cause" reasons were contemplated. Evan's Travel argues that the trial court's finding that the agreement fails to alter the at-will presumption renders the probationary period clause meaningless and therefore was error.

We presume that the parties to a contract intend every clause to have some effect. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983). Provisions which are apparently conflicting are to be reconciled and harmonized, if possible, by reasonable interpretation so that the entire agreement can be given effect. *Exxon Corp. v. Eastman Kodak Co.*, 589 S.W.2d 473, 478 (Tex.Civ.App.-Texarkana 1979), *rev'd on other grounds*, 603 S.W.2d 208 (Tex.1980).

We find that the trial court erred in determining that the employment agreement failed to alter the at-will presumption. First, the agreement provided for a term of years, which, as discussed earlier, alters the at-will presumption and limits the employer's ability to terminate the employee to only "for cause" reasons. Second, in light of the term of years and presumption that the parties to a contract intend every provision to have some effect, we find that the probationary clause further supports the finding of an alteration of Adams' at-will status. The provision which Adams argues gives Evan's Travel the ability to terminate for "any reason" can only be read to mean any "for cause" reason.

The employment agreement between Adams and Evan's Travel constitutes an otherwise enforceable agreement upon which a covenant not to compete may be an ancillary part. We must now move to the second inquiry, whether the covenant not to compete was, in fact, ancillary to or part of such an agreement at the time the agreement was made.

### 2. Is the covenant not to compete ancillary to an otherwise enforceable agreement?

In order to determine if the agreement is ancillary to an otherwise enforceable agreement, we must apply the two-prong test developed in *Light*. We must determine if:

(1) the consideration given by the employer in the otherwise enforceable agreement [gives rise] to the employer's interest in restraining the employee from competing; and

(2) the covenant [is] designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.

Unless both elements of the test are satisfied, the covenant cannot be ancillary to or a part of an otherwise enforceable

agreement, and is therefore a naked restraint of trade and unenforceable.

*Light,* 883 S.W.2d at 647.

In the instant case, the trial court found that Evan's Travel did not train or otherwise supply Adams with any protected proprietary information or trade secrets and therefore concluded that the covenant not to compete within the employment contract was not ancillary to or a part of an otherwise enforceable agreement. Adams asserts that, since she was not supplied with any confidential information, Evan's Travel's promise to do so was illusory and incapable of supporting the promises contained in the covenant not to compete. The thrust of Evan's Travel's argument is that the office procedures and the customer information to which Adams had access is confidential information and was enough to support the covenant.

At trial, Evan Shelan, the owner of Evan's Travel, admitted that Adams was already a trained travel agent with ten years' experience when she began working for Evan's Travel. Shelan testified that Adams was trained by him in Evan's Travel's "system," which included such office procedures as accounting and report writing. He further testified that, absent an agreement otherwise, she could take her knowledge of office procedures with her and implement them in any other travel agency. Adams testified that, according to her experience as a travel agent, the business is standard from one agency to the next.

■ General skills and knowledge developed through the course of employment are not the type of interest which justifies protection under a restrictive covenant. *Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d 657, 662 (Tex.Civ.App.-San Antonio 1975, writ ref'd n.r.e.); RESTATEMENT (SECOND) OF CONTRACTS § 188 cmt. g (1981). It appears that the training provided to Adams by Evan's Travel covered general housekeeping functions which, although necessarily individualized from one business to another, do not rise to the level required in order for one to perform the core job duties expected which should be protected by restrictive covenants. Given the evidence presented at trial, we do not find that the determination of the trial court that Evan's Travel did not provide any specialized training worthy of protection by a restrictive covenant to be so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. Nor do we find that the evidence establishes conclusively that such generalized training in office procedures constitutes training worthy of protection.

Evan's Travel also argues that the client information to which Adams had access constituted confidential information under the terms of the covenant and therefore supports the covenant. The trial court found that Evan's Travel did not provide Adams with any confidential information and, therefore, found the covenant to be unenforceable.

At trial, Shelan testified that the client files for Evan's Travel, which contained information such as the customers' identifying information, trip destinations, and cost information, were made available to Adams. Shelan repeatedly testified that he believed that Evan's Travel's client base was confidential information. Shelan testified that Evan's Travel maintained customer files and a computer database of clients to which Adams had access. However, Adams testified that she was unaware of any customer lists kept by Evan's Travel, and she asserted that the computer records which she created in the course of her work were not permanent. She further testified that she did not take any customer list or customer information when she left, and Shelan agreed that Adams did not take such information.

■ A trade secret may consist of any formula, pattern, device, or compilation of information that is used in one's business and which gives one an opportunity to obtain an advantage over competitors who do not know or use it. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex.1996). Items such as customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings have been shown to be trade secrets. *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 601 (Tex. App.-Amarillo 1995, no writ); *American Precision Vibrator Co. v. National Air Vibrator Co.,* 764 S.W.2d 274, 278–79 (Tex.App.-Hous-

ton [1st Dist.] 1988, no writ). When an effort is made to keep material important to a particular business from competitors, trade secret protection is warranted. *Rugen v. Interactive Bus. Sys., Inc.,* 864 S.W.2d 548, 552 (Tex.App.-Dallas 1993, no writ); *Gonzales v. Zamora,* 791 S.W.2d 258, 265 (Tex. App.-Corpus Christi 1990, no writ). Customer information is a legitimate interest which may be protected in an otherwise enforceable covenant not to compete. *Martin v. Credit Protection Ass'n, Inc.,* 793 S.W.2d 667, 670 n. 3 (Tex.1990) (citing *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681–82 (Tex.1990)).

Essentially, the only evidence which supports Evan's Travel's assertion that the information to which Adams had access was confidential was the act of making the covenant not to compete agreement an integral part of the employment relationship between Evan's Travel and Adams, thereby attempting to protect the information, and Shelan's opinion that such information was confidential. There is no other evidence in the record as to what measures were taken by Evan's Travel to ensure the secrecy of customer information. However, the only evidence in the record which disputes the confidentiality of the information is the opinion of Adams that she did not believe the information to which she had access was confidential. The record shows that the information to which Adams had access was confidential and supports the two-prong test announced in *Light.* The consideration given by Evan's Travel to Adams consisted of the customer information, and such information gives rise to Evan's Travel's interest in restraining Adams from competing. The covenant was designed to enforce Adams' return promise to not disclose such information or to compete with Evan's Travel. Therefore, we find the trial court's finding that no confidential information was shared to be contrary to the evidence. The covenant not to compete is ancillary to an otherwise enforceable agreement.

### 3. *Reasonable Limitations as to Geographical Area*

To be enforceable, a noncompete covenant must contain reasonable limitations as to time, geographical area, and scope of activity to be restrained. The covenant cannot impose a greater restraint than necessary to protect the goodwill or other business interest of the promisee. TEX. BUS. & COM. CODE ANN. § 15.50. Whether a covenant is a reasonable restraint of trade is a question of law. *Martin,* 793 S.W.2d at 668–69. We must now assess whether the scope of limitations imposed by the agreement is reasonable as required by Section 15.50. In its judgment, the trial court stated that "at the time of the execution of the employment contract, Evan's knew that the covenant did not contain limitations as to geographical area and the scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of Evan's." In its findings of fact, the trial court also found "that the effort to restrain Adams from acting as a travel agent in Gregg County, Texas was an effort to impose a greater restraint than was necessary to protect the goodwill or other business interest of Evan."

Section 8(a) of the Employment Agreement provides:

> [For three-year period after the Ending Date] . . . Employee will not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity, engage or participate in any business that is in competition in any manner whatsoever with the business of the Company on the Ending Date *within the counties of Gregg and Harrison, State of Texas, or any State in which the Employer is conducting or has conducted its business during the Term of Employment.* . . .

(emphasis added).

Evan's Travel challenges the trial court's findings that the geographical area restrictions were unreasonable and that Evan's Travel knew that the geographical restrictions were unreasonable.

Texas courts have generally held that a geographical limitation imposed on the employee which consists of the territory within which the employee worked during his em-

ployment is a reasonable geographical restriction. *Property Tax Assocs., Inc. v. Staffeldt,* 800 S.W.2d 349, 351 (Tex.App.-El Paso 1990, writ denied); *Diversified Human Resources Group, Inc. v. Levinson–Polakoff,* 752 S.W.2d 8, 12 (Tex.App.-Dallas 1988, no writ); *see generally Justin Belt Co. v. Yost,* 502 S.W.2d 681, 685 (Tex.1973) (court reformed geographical limitations to more reasonable area). Adams worked in Harrison County, Texas. The restraint on Adams from doing business anywhere in the United States or the state of Texas · is clearly an unreasonable restriction.

Evan's Travel argues that the geographical restraint language in the agreement did not prevent Adams from working anywhere in the state of Texas, but rather, "State of Texas" was intended to modify Gregg and Harrison counties for specificity purposes. This is not the interpretation which the trial court gave, and we consider the trial court's interpretation to be a logical one given the construction of the sentence in the agreement. Evan's Travel did not establish its proposed alternative interpretation as a matter of law, and the trial court's conclusion is not so against the weight of the evidence as to be clearly wrong or unjust.

The trial court also found that Shelan was aware that the covenant not to compete as contained in the contract of employment did not contain limitations as to geographical area that were reasonable and that the limitations imposed a greater restraint than was necessary to protect the goodwill or other business interest of Evan's Travel. Shelan argues that he intended to prevent Adams from working in Harrison and Gregg counties only and that his understanding of the covenant was that she was restricted from competing only in those two counties. Shelan admitted that he had read the covenant not to compete portion of the contract. However, the geographical scope of the agreement clearly attempts to restrain Adams from working as a travel agent "within the counties of Gregg and Harrison, State of Texas, or any State in which [Evan's Travel] ... has conducted its business ...." during Adams' term of employment. There is no language which tailors the geographical

restrictions to keep Adams from working in only geographical areas where she worked, but rather, the limitations in the agreement purport to prevent her from working anywhere Evan's Travel conducted business. We do not find that the trial court erred in determining that Evan's Travel knew that the restraint imposed was greater than necessary to protect its legitimate business interest.

Since we find that the covenant in this case is ancillary to an otherwise enforceable agreement, but imposes an unreasonable geographical restriction, we are commanded by law to reform the covenant. Section 15.51 of the Covenant Not to Compete Act provides:

> (c) If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed, ....

As stated earlier, Texas courts have found a geographical restriction to be reasonable if the restriction imposed consists of the territory within which the employee worked during his employment. It is undisputed that Adams worked only at the Marshall, Texas, office located in Harrison County. It is also undisputed that, although Evan's Travel had offices in Gregg County, Adams could not recall having any customers in Gregg County. Shelan also admitted that he was not aware of Adams having any customers in Gregg County. Because of this evidence, we find that a reasonable geographical restriction limiting Adams from competing with Evan's Travel in Harrison County alone is sufficient to protect its business interest.

We therefore hold the agreement to be enforceable in Harrison County only.

## C. *Attorney's Fees for Adams*

■ The trial court awarded Adams an attorney's fee in the amount of $3,000.00 for trial and an additional $1,500.00 attorney's fee if the case was appealed. Adams sought such fees under Section 37.009 of the Texas Civil Practice and Remedies Code and Section 15.51 of the Texas Business and Commerce Code. These claims were contained in her live pleadings at the time of trial. Since we have found the covenant, as reformed, to be enforceable, it is appropriate for the trial court to reassess the amount of attorney's fees awarded to Adams in light of this holding. In making this assessment, the trial court should take into account that we affirm the court's determination that the agreement was geographically overbroad and that Shelan knew that it was overbroad at the time of the agreement.

Evan's Travel claims that the award of an attorney's fee for appeal is unsupported by the evidence and correctly points out that there was no evidence offered with regard to the proper amount of such a fee.

■ Section 15.51(c) authorizes the award of reasonable attorney's fees which were "actually and reasonably incurred" if the court finds that:

> the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to ... geographical area ... that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary....

TEX. BUS. & COM.CODE ANN. § 15.51(c). The Declaratory Judgment Act, the Act under which Evan's Travel brought suit, also allows for the award of attorney's fees which the court deems equitable and just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). A party who seeks to recover attorney's fees in a declaratory judgment action under Section 37.009 must prove that the fees are reasonable and necessary. *Geo-Chem Tech Corp. v. Verseckes*, 929 S.W.2d 85, 92 (Tex.App.-Eastland 1996), *rev'd on other grounds*, 962 S.W.2d 541 (Tex.1998). Under either of these provisions, Adams must prove either the amount of fees actually and reasonably incurred or the amount which was reasonable and necessary. Since the record is void of any evidence that the fees awarded for appeal were actually and reasonably incurred or were reasonable and necessary, we hold that there is no evidence to support the award of attorney's fees to Adams for appeal.

## D. *Intervention of Marshall Pro–Travel*

■ Evan's Travel's original petition, and the live pleadings at trial, named only Adams as a defendant in this action. Evan's Travel did, however, name Pro–Travel in a motion for injunctive relief as a "necessary party." Evan's Travel contends that Pro–Travel was not made a party to the suit. Pro–Travel, along with Adams, were both referred to by Evan's Travel as "Defendants" throughout the motion for injunction. The trial court subsequently granted a temporary injunction against Adams and Pro–Travel.[1] Evan's Travel contends that there was no justiciable controversy between itself and Pro–Travel and Evan's Travel had no claim pending against Pro–Travel. This being the case, Evan's Travel contends that the intervention of Pro–Travel was improper and a surprise.

■ Generally, an intervenor must show that he has standing to maintain a suit in his own right in order to intervene. *Segovia–Slape v. Paxson*, 893 S.W.2d 694, 696 (Tex.App.-El Paso 1995, orig. proceeding). This showing requires that the intervenor have some present justiciable interest in the subject matter of the suit. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex.1982). However, this general statement is not always true. If an intervenor-defendant could not have been sued directly, but a judgment for the plaintiff may lead to an action against the

---

1. The injunction never became effective because the appropriate bond was never obtained or filed by Evan's Travel.

intervenor or otherwise seriously prejudice the intervenor, the intervenor's intervention is necessary to assure a proper defense against the claim. 1 Roy W. McDonald, Texas Civil Practice § 5.79 (1992). In order to intervene, a party must have such interest in the subject matter of litigation as makes it necessary or proper for him to come into the case for the preservation of that right. *Stansell v. Fleming,* 81 Tex. 294, 16 S.W. 1033, 1034 (1891).

In the present case, the trial court entered a temporary injunctive order against Pro–Travel requiring it to cease an employment relationship with Adams. Although Pro–Travel was not a party formally named in the plaintiff's petition, its rights were directly affected by the injunction. This gave an interest in the litigation to Pro–Travel which served as a proper basis for intervention.

E. *Attorney's Fees for Marshall Pro–Travel*

 Evan's Travel argues that the award of attorney's fees to Pro–Travel was error. Evan's Travel argues that Pro–Travel had no justiciable interest which could support the award of attorney's fees and it was error for the trial court to award such fees when no actual damages were asserted by Pro–Travel.

As discussed above, Pro–Travel did have a justiciable interest in litigation which was created by Evan's Travel's enjoining it from freely entering into an employment relationship.

On January 28, 1997, Pro–Travel filed an amended answer and counterclaim asserting that a justiciable controversy existed between Evan's Travel and Pro–Travel concerning (1) any liability which Pro–Travel might have to Evan's Travel for any business dealings between Evan's Travel and Adams, and (2) the responsibility which Pro–Travel might have for the payment of attorney's fees or costs to Evan's Travel. Pro–Travel then asked the trial court for a judicial determination that it was not liable to Evan's Travel by virtue of Evan's Travel's contract with Adams and also asked the trial court to award attorney's fees against Evan's Travel since Pro–Travel had retained counsel in the matter. The trial court allowed the counterclaim, and trial on the merits was held on February 10, 1997.

 In response to Evan's Travel's argument, Pro–Travel argues that the attorney's fees awarded do not stand alone, but were granted ancillary to the counterclaim for declaratory relief which it sought and obtained against Evan's Travel. Pro–Travel relies on the Declaratory Judgment Act, which allows an award of attorney's fees which is "equitable and just." The award of such attorney's fees is discretionary, and the trial court's award will not be reversed on appeal absent a clear showing of abuse of discretion. *Knighton v. International Bus. Mach. Corp.,* 856 S.W.2d 206, 210 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

The trial court found that Pro–Travel did not interfere with the contract between Adams and Evan's Travel and made findings to support its judgment. The contract before the court clearly showed the only two parties to the contract to be Adams and Evan's Travel. No evidence was offered at trial to show that Pro–Travel interfered with the contract in any manner. In effect, this dispute was between Adams and Evan's Travel. Pro–Travel was not involved until Evan's Travel obtained a temporary injunction against Pro–Travel, thereby making Pro–Travel a party to the controversy. Since it was unnecessary to include Pro–Travel as a party in order to resolve this controversy, the trial court's award of attorney's fees in favor of Pro–Travel is equitable and just. Pro–Travel offered evidence that its attorney's fees for trial amounted to $1,800.00. The trial court did not err in awarding $1,800.00 in attorney's fees to Pro–Travel.

 However, for the same reason discussed above concerning Adams' attorney's fee for appeal, the trial judge erred in awarding an additional $1,500.00 to Pro–Travel for fees through appeal since no evidence was offered to support such an award.

III. *SUMMARY*

The trial court's judgment that Adams' covenant not to compete is unenforceable is **reversed,** and all findings necessary to that

determination are set aside. The court's findings that the geographical area restraints in the covenant are unreasonable and that Evan's Travel knew those restrictions were unreasonable are **affirmed**. The agreement is **reformed** to make the covenant not to compete enforceable in Harrison County, Texas, only.

The award of $1,500.00 to Pro–Travel for attorney's fees at trial is **affirmed**. The award of $3,000.00 in attorney's fees to Adams is **remanded** to the trial court for reassessment in light of our holding that the agreement is enforceable, as reformed, and taking into consideration that we have affirmed the finding that the agreement was geographically overbroad and that Shelan knew that it was overbroad at the time the agreement was made. The awards of $1,500.00 to Adams and $1,500.00 to Pro–Travel for attorney's fees on appeal are **reversed**.

This cause is **remanded** to the trial court for further proceedings in accordance with this opinion.