In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-511 CV


____________________



AMERICAN NATIONAL INSURANCE COMPANY AND 


AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, Appellants



V.



FRANK E. CANNON II, CLIFTON MARK GRAYLESS, 


DEBORAH GLENN, AND ROBERT WESTOVER, INDIVIDUALLY AND ON 


BEHALF OF ALL OTHERS SIMILARLY SITUATED, Appellees






On Appeal from the 221st District Court


Montgomery County, Texas


Trial Cause No. 00-01-00371-CV








OPINION


 This interlocutory appeal is from a class certification order. Appellant American
National Insurance Company ("ANICO") is a life insurance company. Appellant
American National Property and Casualty Company ("ANPAC") is a property and casualty
insurance company and a subsidiary of appellant ANICO. The four named plaintiffs,
Frank E. Cannon II, Clifton Mark Grayless, Deborah Glenn, and Robert Westover
("plaintiffs"), sold ANPAC and ANICO insurance pursuant to agent agreements.

The Agreements


General Agent Agreements


 The agreements provide, in part, that plaintiffs will not solicit ANPAC or ANICO
policyholders in a specific territory for a specified time period after termination of the
agreements. The proscribed time period under the ANPAC contract is one year; the
ANICO time period is two years. Under the ANPAC contract, "territory" is defined as
an area "within a twenty-five (25) mile radius of the Agent's office. This territory may
be enlarged upon written request from the Agent and written approval from the Company." 
The territory covered by the ANICO agreement is "any territory in which [the Agent is]
properly licensed." 

 Agent Advance Agreements


 Three of the four plaintiffs also signed Agent Advance Agreements with ANPAC. 
Although ANPAC agents are paid by commission on the policies they actually sell,
ANPAC can, under the contract, make payments of compensation to the agents in advance
of sales. The advance payments are to be offset against the agents' earned commissions.
The ANICO agreements contain similar provisions. 


The Lawsuit


 Plaintiffs assert they were defrauded. They claim they were each told they would
"own their own business" and, if terminated, would not have to repay any money
previously advanced to them. Plaintiffs also claim they were wrongfully terminated. 
Their pleadings allege individual claims of breach of contract, fraud, and negligent
misrepresentation, as well as violations of the Deceptive Trade Practices Act and the
Insurance Code. Plaintiffs request actual and punitive damages for themselves and actual
damages for a class of agents similarly situated.

 The trial court's class certification order named plaintiffs to represent the following
persons in a class action:

 [Class A] All persons in Texas who, from January 1, 1993[,] to the
present, executed an independent contractor agreement with
ANPAC and/or ANICO containing a non-competition
provision; and


 [Class B] All persons who, from January 1, 1993[,] to the present,
executed any advance agreement with ANPAC and/or ANICO.The trial court certified the following two issues for class treatment: 1. [Class A] Declaratory judgment, wherein Plaintiffs . . . request this Court
to declare that the covenants not to compete contained in the ANICO and
ANPAC agreements are not "ancillary to or part of an otherwise enforceable
agreement at the time the agreement [was] made" and that they do not
otherwise comply with section 15.50 et. seq. of the Texas Business and
Commerce Code; and


 2. [Class B] Declaratory judgment, wherein Plaintiffs . . . request this Court
to declare that any balance owing ANICO and/or ANPAC pursuant to the
advance agreements does not have to be paid upon termination of the
relationship. 

The class certification order provides that individual issues will be tried to a jury after the
trial court rules on the two issues certified for class treatment. 

Jurisdiction


 We first consider ANPAC's contention that the trial court lacked jurisdiction
because the four class representatives lack standing or their claims are not ripe. See The
M.D. Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 710-711 (Tex. 2001) (standing);
see also Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 851 (Tex. 2000) (ripeness). 
To establish standing, a plaintiff must show "a distinct injury to the plaintiff and 'a real
controversy between the parties, which . . . will be actually determined by the judicial
declaration sought.'" Brown v. Todd, 53 S.W.3d 297, 305 (Tex. 2001) (quoting Texas
Workers' Compensation Comm'n v. Garcia, 893 S.W.2d 504, 517-18 (Tex. 1995)). 
Ripeness focuses on when the action may be brought; advisory opinions or adjudications
based on contingent or hypothetical facts are precluded by dismissal of claims that are not
ripe. See Gibson, 22 S.W.3d at 851-852. If the plaintiff lacks individual standing or the
claim is not ripe, the court should dismiss the suit for want of jurisdiction. See M.D.
Anderson, 52 S.W.3d at 711; see also Gibson, 22 S.W.3d at 853. 

 ANPAC's standing and ripeness arguments, as they pertain to the non-compete
provisions, are as follows: (1) if the time frame on the named plaintiff's non-compete
provision is operative at the beginning of litigation but expires during the course of the
suit, the party has no standing; (2) if, on the other hand, the named plaintiff is still an
agent of the company and the non-compete clause has not been triggered, the party has no
standing and the claim is not ripe. Generally, a personal stake must exist at the beginning
of litigation and continue throughout the lawsuit's existence. See Southern Pac. Terminal
Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 514-16, 31 S.Ct. 279, 55 L.Ed. 310
(1911); see also United States Parole Comm'n v. Geraghty, 445 U.S. 388, 394, 398, 404,
100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). An exception to the general rule may apply when
a claim on the merits is capable of repetition, yet evades review. Id. 445 U.S. at 398; see
also Sosna v. Iowa, 419 U.S. 393, 402, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In this case
we need not consider the applicability of the exception. The fact that the non-compete
period here expires during the litigation does not mean the plaintiff has no personal stake
and lacks standing; if the plaintiff suffers injury as a result of the provision, the plaintiff
would continue to have an interest in a determination of the invalidity of the clause. 
Furthermore, the employed plaintiff has a justiciable interest in determining whether, upon
leaving the company, the plaintiff would be required to comply with the non-compete
provision, particularly when, as here, counterclaims to enforce the non-compete clauses
have been filed. 

 Similarly, ANPAC points out that if class representatives are currently agents,
whether they will have to pay money after termination of their relationship with ANICO
is unknown and cannot be ascertained until termination occurs. But in a declaratory
judgment action, a party to a contract may file suit to declare rights under a contract if the
circumstances show the presence of "'ripening seeds of controversy.'" See City of Waco
v. Texas Natural Resource Conservation Comm'n, No. 03-01-00217-CV, 2002 WL
924192, at *4 (Tex. App.--Austin, May 9, 2002, no pet. h.) (quoting Texas Dep't of
Banking v. Mount Olivet Cemetery Ass'n, 27 S.W.3d 276, 282 (Tex. App.--Austin 2000,
pet. denied). Here, plaintiffs assert that contracts and related oral representations warrant
a declaration by the trial court that no money need be repaid under the advance agreements
once the contract is terminated. In contrast, appellants maintain the monies advanced
under these contracts must be repaid. Appellants have sought to enforce both the advance
agreements and non-compete provisions by filing counterclaims against the named
plaintiffs herein and by making demand upon or filing suit against other agents in the State. 
We conclude the issues are ripe and the plaintiffs have standing. ANPAC's issue one is
overruled. 


 Standard of Review


 The appellate review standard for a class certification order is abuse of discretion. 
Southwestern Ref. Co. v. Bernal, 22 S.W.3d 425, 439 (Tex. 2000). The trial court abuses
its discretion if it acts without reference to any guiding principles or acts arbitrarily or
unreasonably. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex.
1985). A failure by a trial court to analyze or apply the law correctly is an abuse of
discretion. McDaniel v. Yarbrough, 898 S.W.2d 251, 253 (Tex. 1995). 

 To obtain class certification, the proponent of the class must satisfy all four criteria
in Rule 42(a) and at least one of the conditions in Rule 42(b). See Tex. R. Civ. P. 42; 
see also Bernal, 22 S.W.3d at 433. The order here relies on three separate Rule 42(b)
provisions. 

Rule 42(b)(4)


 We first consider the trial court's certification of the class under Rule 42(b)(4). A
class action satisfies (b)(4) if two requirements are met: if questions of law or fact common
to the members of the class predominate over any questions affecting only individual
members; and if the class action is superior to other available methods for the fair and
efficient adjudication of the controversy. See Tex. R. Civ. P. 42(b)(4). The test for
predominance is not whether common issues outnumber uncommon issues, but rather
whether "common or individual issues will be the object of most of the efforts of the
litigants and the court." Bernal, 22 S.W.3d at 434. Predominance is determined by
identifying the substantive issues that are dispositive of the litigation, assessing which
issues will predominate, and determining whether these predominating issues are common
to the class. See Bernal, 22 S.W.3d at 434. The (b)(4) requirement of predominance
precludes class action litigation where the sheer complexity and diversity of the individual
issues would overwhelm or confuse a jury or severely compromise a party's ability to
present viable claims or defenses. Bernal, 22 S.W.3d at 434, 437.

 Class A

 For Class A claims, plaintiffs request a declaration that the non-compete covenants
were not ancillary to or part of an otherwise enforceable agreement at the time the
agreements were made and that the covenants do not otherwise comply with section 15.50,
et. seq. of the Texas Business & Commerce Code. Both the ANICO and ANPAC
contracts contain similar non-compete clauses, the main differences being the scope of the
geographical and time restrictions. Section 15.50 provides that a non-compete covenant
is enforceable if the covenant:


 
 is ancillary to or part of an otherwise enforceable agreement;
 
 is made at the time the other agreement is made;



 contains reasonable limitations as to time;
 contains reasonable limitations as to geographical area;
 contains reasonable limitations as to scope of activity to be restrained;
and,
 imposes no more restraint than is necessary to protect the goodwill or
other business interest of the promisee.



See Tex. Bus. & Com. Code Ann. § 15.50(a) (Vernon 2002). 

 The legal conclusion as to whether a particular geographical restraint is reasonable 
would include consideration of the class member's market territory and individual
circumstances. Agents for ANPAC and ANICO are located throughout Texas. Under the
ANPAC agreement the geographical restriction is a twenty-five mile radius of the agent's
office unless enlarged by agreement. Under the ANICO agreement the non-compete
provision covers the area in which the agent is licensed. What the restricted geographical
territory actually is for each individual agent, whether the territory has been enlarged,
whether the twenty-five mile zone described in the ANPAC contract corresponds to an
agent's territory, and whether or not the geographical limitations in both contracts are
reasonable in view of the relevant market factors will require individual determinations. 
 If the trial court does find any of the non-compete clauses unenforceable because
of unreasonable limitations -- for example, a geographical restriction covering the entire
license area -- the trial court is required by statute to reform each covenant to the extent
necessary to make it reasonable. See Tex. Bus. & Com. Code Ann. § 15.51(c) (Vernon
2002). Section 15.51(c) provides in part, that if the covenant not to compete is "ancillary
to or part of an otherwise enforceable agreement but contains limitations as to time,
geographical area, or scope of activity to be restrained that are not reasonable . . . the
court shall reform the covenant to the extent necessary to cause the limitations contained
in the covenant . . . to be reasonable[.]" Id.; see generally B.J. Software Sys., Inc. v.
Osina, 827 S.W.2d 543, 546 (Tex. App.--Houston [1st. Dist.] 1992, no pet.). In
reforming covenants found to be unreasonable, the court should take into account
individual circumstances. See Evan's World Travel, Inc. v. Adams, 978 S.W.2d 225, 233-34 (Tex. App.--Texarkana 1998, no pet.) (geographical restriction reformed). Fact
specific individual determinations would be unavoidable here. See generally Dairyland
County Mut. Ins. Co. of Texas v. Casburg, 63 S.W.3d 590, 592 (Tex. App.--Beaumont
2001, pet dism'd w.o.j.) ("Little value is gained from a class action where factual
distinctions make the class unmanageable.") (citing Barnes v. American Tobacco Co., 161
F.3d 127, 143 (3d. Cir. 1998)). In this case, Section 15.50's reasonableness
determinations cannot be made on a class-wide scale.

 Class B

 For Class B claims, the plaintiffs request a declaration that any balance owed by an
agent under an advance agreement does not have to be repaid. The plaintiffs pleaded the
basis of their request as being representations made by appellants to plaintiffs to that effect. 
Yet in a supplemental letter brief to the trial court prior to class certification, plaintiffs
disavowed any reliance on oral representations as the basis for a declaration of no amount
owed; plaintiffs told the trial judge that their issue was grounded in "the 'four corners' of
the agreements.'" Plaintiffs maintain the same argument on appeal. 

 The issue certified for class treatment requires the trial court to declare whether any
outstanding balance must be paid upon termination of the relationship. The ANICO
advance agreement provides that the company is authorized to bring suit for collection of
any unpaid balance. The general agent agreement also gives ANICO a first lien which it
may foreclose as permitted by law and provides that ANICO can offset the indebtedness
against the agent's commissions, fees, or other compensation. In the ANPAC advance
agreement, the agent assigns to the company the right, title, and interest in any
compensation payable to the agent under the advance agreement in consideration for the
advance payments. ANPAC is given the right to reduce and offset any amounts owed to
it against commissions, fees, and other compensation payable to the agent. The written
agreements clearly speak of an agent's indebtedness in connection with advance payments
that are not repaid. 

 The Class B issue, as certified, involves more than a determination of the precise
meaning of the language in the advance agreements. As worded, the scope of the issue
necessarily encompasses any representations referenced in the plaintiffs' pleadings. 
Plaintiffs pleaded oral modifications of the written contracts, misrepresentation, and fraud
-- all issues that may turn on individual circumstances. Although plaintiffs' letter brief to
the trial court indicates plaintiffs do not rely on any oral representations regarding the
written advance agreements, their pleadings, both before and after the certification order,
state otherwise. The issues, as broadly worded, include the claims made in plaintiffs'
pleadings. What each class member in this case was told regarding monies owed under
the advance agreements, along with any reliance on those representations, would require
individual determination. Because individual issues predominate over common issues,
Rule 42(b)(4) is not satisfied. See generally Peltier Enters., Inc. v. Hilton, 51 S.W.3d
616, 623 (Tex. App.--Tyler 2000, pet. denied) ("answering the questions of materiality
and reliance as to one plaintiff does not answer the same question as to other putative class
members."). 

Rule 42(b)(2)


 The trial court also relied on Rule 42(b)(2) in certifying the class. A class action
cannot be certified under (b)(2) unless the "party opposing the class has acted or refused
to act on grounds generally applicable to the class, thereby making appropriate final
injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]" 
Tex. R. Civ. P. 42(b)(2). As under section (b)(4), the merits of each putative class
member's claims, under both the non-compete agreement and the advance payment
agreement, depend on that individual's circumstances: for example, the reasonableness
of the non-compete restrictions given the individual's circumstances, and the individual's
reliance on any misrepresentation regarding advance payments. Under section (b)(2) these
individual factors preclude injunctive relief or corresponding declaratory relief without
consideration of individual circumstances, at least as the issues are broadly worded in the
certification order. 

 Furthermore, in a section 42(b)(2) class action, the injunctive or declaratory relief
sought must predominate over the monetary relief sought. See TCI Cablevision of Dallas
v. Owens, 8 S.W.3d 837, 847 (Tex. App.--Beaumont 2000, pet. dism'd by agr.). Any
monetary relief sought in a (b)(2) class action must be incidental to the related claims for
injunctive relief or corresponding declaratory relief. Incidental damages flow directly
from liability to the class as a whole on the claims forming the basis of the injunctive or
declaratory relief. See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.
1998) (applying Fed. R. Civ. P. 23(b)(2), the counterpart to Rule 42(b)(2)). Rather than
being dependent on subjective, individual circumstances of class members, incidental
damages should be amenable to easy calculation, using objective standards. Allison, 151
F.3d at 425. As the Allison court explained, "Liability for incidental damages should not
require additional hearings to resolve the disparate merits of each individual's case; it
should neither introduce new and substantial legal or factual issues, nor entail complex
individualized determinations. Thus, incidental damages will, by definition, be more in
the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class
actions." Id. at 415. 

 Given the nature of the relief requested here and the degree to which recovery of
damages in both classes requires individualized proof and determinations, the damages
requested by plaintiffs are not sufficiently "incidental" to permit them in a class action
under Rule 42(b)(2). The damages sought here are more of an individual remedy and less
of a group remedy -- dependent more upon the varying circumstances and merits of each
potential member's case. Rule 42(b)(2) is not satisfied. See generally Casburg, 63
S.W.3d at 592. 

Rule 42(b)(1)(A)


 The trial court also relied on Rule 42(b)(1)(A) in certifying the class. Rule
42(b)(1)(A) requires a showing that the prosecution of separate actions by or against
individual members of the class would create a risk of inconsistent or varying adjudications
with respect to individual members of the class and establish incompatible standards of
conduct for the party opposing the class. But as we have noted, Tex. Bus. & Com. Code
Ann. § 15.50 requires an individual determination of the reasonableness of the non-compete restrictions; the reasonableness depends on the individual facts and circumstances
affecting the individual agent. See generally Texas Dep't of Transp. v. Barrier, 40 S.W.3d
153, 159-60 (Tex. App.--Houston [14th Dist.] 2001, no pet.). Similarly, the enforcement
of the advance agreements depends on the varying circumstances and merits of each
potential member's case. Rule 42(b)(1)(A) is not satisfied.

 The trial court's certification order is vacated and this case is remanded to the trial
court for proceedings consistent with this opinion. 

 REVERSED AND REMANDED.

 _________________________________

 DAVID B. GAULTNEY

 Justice



Submitted on May 16, 2002

Opinion Delivered September 26, 2002

Publish


Before Walker, C.J., Burgess and Gaultney, J.J.