In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00083-CR
______________________________


ZAID ALBANA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 114th Judicial District Court
Smith County, Texas
Trial Court No. 241-1413-03


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Zaid Albana appeals from his conviction for murder. Albana pled guilty to the murder of
Rouzheen Arainpour, and the trial court sentenced him to life imprisonment. On appeal, Albana
argues that the Texas defense of insanity is unconstitutional on its face and as applied to him because
it results in cruel and unusual punishment by excluding serious mental illnesses. We affirm the
judgment of the trial court.
            Albana and Arainpour had been friends since childhood, but recently had some differences. 
Kelly O'Dell, Arainpour's girlfriend, testified that it bothered Arainpour "a lot" that he had lost his
childhood friend. Albana and Arainpour arranged to meet at Barnes & Noble in Tyler, Texas. 
Albana confronted Arainpour in front of the store. During the confrontation, Albana shot Arainpour
with a rifle. Arainpour stumbled into the Barnes & Noble store bleeding profusely. Albana followed
Arainpour into the store while carrying the rifle and screamed: "How do you like that now? How
does it feel now?" Albana then fired a second shot into the ceiling of the store, stated that he had
"no beef with any of the rest of you," and then calmly left the store. Arainpour eventually died from
the gunshot wound. 
            During the punishment phase, the defense presented several experts who testified that Albana
was suffering a delusional disorder, which the experts referred to as a persecutory delusion. 
Delusion results from a fixed false belief, which the victim believes is true. Albana believed that
Arainpour posed a threat to him and wanted to put an end to the fear he felt Arainpour posed. 
According to the experts, there was a causal connection between the delusional disorder and the
commission of the offense. The experts, though, testified Albana knew that his conduct was wrong. 
            On appeal, Albana argues that the Texas insanity defense is unconstitutional on its face and
as applied to him. According to Albana, the standard results in cruel and unusual punishment
because the standard does not consider major mental illnesses which affect the defendant's
culpability.


 
            In Helms v. State, the Texas Court of Criminal Appeals held that, "Where a plea of guilty is
voluntarily and understandingly made, all non-jurisdictional defects including claimed deprivation
of federal due process are waived." Helms v. State, 484 S.W.2d 925, 927 (Tex. Crim. App. 1972),
overruled in part, Young v. State, 8 S.W.3d 656 (Tex. Crim. App. 2000). The Helms rule was
modified in Young, 8 S.W.3d at 666–67. Under Young, a defendant's right to challenge errors
occurring before his or her guilty or nolo contendere plea are waived "only when the judgment of
guilt was rendered independent of, and is not supported by, the error." Id. (finding that the judgment
of guilt was not independent of a pretrial ruling on a motion to suppress). While both bargaining and
nonbargaining defendants can appeal rulings on written pretrial motions and jurisdictional issues,
"a non-bargaining defendant pleading guilty may be able to appeal an error not raised on a written
pre-trial motion, if it is otherwise preserved and survives Young." Monreal v. State, 99 S.W.3d 615,
619–20 (Tex. Crim. App. 2003).
            Albana did not raise the constitutionality of the defense of insanity at trial. Albana at no time
objected on the basis that the Texas insanity defense was unconstitutional, and he filed no pretrial
motions challenging the constitutionality of the insanity defense. In general, the Texas Rules of
Appellate Procedure require a timely, specific objection as a prerequite to presenting a complaint for
appellate review except for fundamental error.


 Because Albana did not preserve error, he cannot
complain for the first time on appeal that the Texas insanity defense is unconstitutional as applied
to him.
            A defendant may raise a facial challenge to the constitutionality of a statute for the first time
on appeal.


 To succeed on a facial challenge to a statute, the challenger must establish that no set
of circumstances exists under which the statute will be valid. Santikos v. State, 836 S.W.2d 631, 633
(Tex. Crim. App. 1992); Briggs v. State, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990). Because
Albana has failed to demonstrate that no set of circumstances exists under which the statute would
be valid, he has not met his burden concerning his facial challenge.
            We affirm the judgment of the trial court.
 


                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          February 22, 2005
Date Decided:             March 17, 2005

Do Not Publish




, serif">Standing
            Implicit in the concept of subject-matter jurisdiction, standing is a prerequisite to maintaining
a suit. It "stems from two limitations on subject matter jurisdiction: the separation of powers
doctrine and, in Texas, the open courts provision." Brown v. Todd, 53 S.W.3d 297, 302 (Tex. 2001);
Tex. Ass'n of Bus., 852 S.W.2d at 443–44. As such, standing is essential to the authority of a court
to decide a case, identifies those suits appropriate for judicial resolution, and cannot be waived. 
Brown, 53 S.W.3d at 305; Tex. Ass'n of Bus., 852 S.W.2d at 443, 445–46. If a plaintiff lacks
standing, the trial court has no jurisdiction and must dismiss the entire case. M.D. Anderson Cancer
Ctr. v. Novak, 52 S.W.3d 704, 707–08 (Tex. 2001); Am. Nat'l Ins. Co. v. Cannon, 86 S.W.3d 801,
806 (Tex. App.—Beaumont 2002, no pet.).
            A plea to the jurisdiction is a dilatory plea by which a party challenges a court's authority to
determine the subject matter of an action. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000). The purpose of a dilatory plea is not to force the plaintiff to preview his or her case on the
merits, but to establish a reason why the merits should never be reached. Id. Thus, our task is not
to decide the merits of Forth's case, but rather to examine her pleadings, taking as true the facts pled,
to determine whether those facts support jurisdiction in the trial court. Penley v. Westbrook, 146
S.W.3d 220 (Tex. App.—Fort Worth 2004, no pet. h.). "When a plea to the jurisdiction challenges
the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's
jurisdiction to hear the cause." Miranda, 133 S.W.3d at 226; Bland, 34 S.W.3d at 555.
            Unless standing is conferred by statute, a plaintiff must show an interest in a conflict distinct
from that of the public at large. Williams v. Lara, 52 S.W.3d 171, 178 (Tex. 2001). That is,
"standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff and 'a
real controversy between the parties, which . . . will be actually determined by the judicial
declaration sought.'" Brown, 53 S.W.3d at 305 (quoting Tex. Workers' Comp. Comm'n v. Garcia,
893 S.W.2d 504, 517–18 (Tex. 1995)).
Forth Has No Standing as to Future Claims or Claim Practices
            Fatal to Forth's request for prospective relief is the standing requirement that a plaintiff's
alleged injury will be redressed by the judicial declaration sought. See Brown, 53 S.W.3d at 305. 
When Forth conceded she was no longer an Allstate insured, she effectively removed herself from
among those who could potentially sustain future harm resulting from Allstate's ongoing claims
review process. Because Forth is no longer insured by Allstate, she cannot be injured or threatened
with injury by any of Allstate's future practices and, thus, would have no personal stake in any
litigation that might arise from them. See Novak, 52 S.W.3d at 707–08.
            In Williams, the Texas Supreme Court was asked to determine whether two former inmates
had standing to pursue declaratory and injunctive relief against Tarrant County in an attempt to stop
a religious education program alleged to be in violation of constitutional protections. 52 S.W.3d at
175–76. The court reasoned that, because the plaintiffs were no longer inmates, they no longer faced
the allegedly unconstitutional conduct about which they complained and would, thus, not be affected
by the requested relief. Id. at 184. Similarly, a plaintiff, who sought to enjoin a manufacturer's
continuing distribution of certain health products that allegedly injured him, lacked standing because
he testified he had no intention of ever again using the product. MET-Rx USA, Inc. v. Shipman, 62
S.W.3d 807, 810–12 (Tex. App.—Waco 2001, pet. denied).
            Once the controversy between two parties ceases to exist, the case becomes moot. That is,
"the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the
outcome." Williams, 52 S.W.3d at 184 (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)). 
Because Forth is no longer an Allstate insured, she has no standing to seek an injunction against
Allstate's ongoing policies. That relief will not redress any injuries she suffered in the past. See
Shipman, 62 S.W.3d at 811.
Forth Has Standing as to Her Past Claims
            Forth does, on the other hand, have standing to seek to require Allstate to review her
previously processed claims. If she can prove her allegations—that she has suffered a distinct injury
from Allstate's alleged wrong—a real controversy exists between the parties (i.e., Forth's injury is
causally connected to Allstate's allegedly unlawful conduct), and the controversy will be actually
determined by the judicial remedies sought. See Brown, 53 S.W.3d at 305. Allstate presses two
principal arguments on this issue.
 
            Allstate first argues that, because Forth has abandoned any request for damages, she cannot
seek an injunction requiring the review of earlier claims. But one can seek an injunction and
declaratory relief without seeking a money judgment for damages. The question is whether she seeks
redress of a justiciable issue. If Forth ultimately is awarded the relief she seeks, Allstate will be
required to review her claims. She also asks that the order contain language that if, on Allstate's
ordered review of her claims, Allstate determines she has not been paid a "reasonable" amount for
her claims, Allstate should then pay her enough to bring her total payments from Allstate to that
newly-determined reasonable total. Though that payment, if any, would not be specified in the
judgment Forth now seeks, such does not negate the fact that she has pled a justiciable controversy
as to her past claim. A fair reading of her live pleading would provide her payment, not of a
numerical sum reduced to judgment, but of whatever sum Allstate determines she is due, once it has
reviewed her claim using the alternate method she describes.
            Allstate also argues Forth does not have standing because she cannot demonstrate actual or
even threatened injury. That is, even though Forth maintains that Allstate has refused to pay her
medical bills in full, she has failed to allege that she has had to pay any of the disputed balance or
that her medical providers have pursued her for any unpaid services. This position, however, is
insupportable in light of Allstate's contractual obligations. By the terms of its own policy, Allstate
agreed to pay the reasonable expenses incurred for necessary medical services, not those actually
paid by the insured.
 
            The relevant portion of Forth's personal injury protection coverage benefits under her Allstate
policy confirms this:
Insuring Agreement
 
A. We will pay Personal Injury Protection benefits because of bodily injury:
            1. resulting from a motor vehicle accident; and
            2. sustained by a covered person.
 
Our payment will only be for losses or expenses incurred within three years
from the date of the accident.
 
B. Personal Injury Protection benefits consist of:
            1. Reasonable expenses incurred for necessary medical and funeral services.
 
(Emphasis added.) There is no requirement under the policy that an insured first demonstrate out-of-pocket expenses or potential future liability in order to demand payment. Under the circumstances,
payment is restricted only by set policy limits and the reasonableness of the expenses incurred for
medical services made necessary because of bodily injury resulting from a motor vehicle accident. 
There is nothing in the record indicating any policy conditions have not been met beyond the
disputed reasonableness of the expenses.
            In Texas, PIP benefits are recoverable regardless of whether an insured has been made to pay
for necessary medical services. In Am. Indem. Co. v. Olesijuk, 353 S.W.2d 71, 72 (Tex. Civ.
App.—San Antonio 1961, writ dism'd w.o.j.), for example, a United States Navy physician suffered
bodily injuries when he was involved in a motor vehicle accident. After incurring expenses for the
treatment he received at a civilian hospital, the physician was reimbursed by the Navy. Id. at 73. 
The defendant insurance company argued that, because the plaintiff's treatment expenses were paid
by the government, he owed no debt, suffered no loss, and consequently incurred no actual expenses. 
The insurer, therefore, maintained it was not obligated under its policy to pay for the already-satisfied
expenses. Id. The court disagreed:
The fact that the insured has other arrangements for the reimbursement of his
expenses does not operate to relieve [the insurer] of its obligation as expressed in its
contract in plain, certain and unambiguous language. If [the insurer] desired to limit
its liability to actual loss or damage ultimately suffered by the insured, it could have
and should have done so in its policy.

Id. (citation omitted).
            In a similar case, which relied in part on Olesijuk, the Texas Supreme Court determined that
an insurer was still obligated to pay expenses incurred despite direct payment of those expenses by
Medicare. Black v. Am. Bankers Ins. Co., 478 S.W.2d 434 (Tex. 1972). The court noted that the
word "incur" means simply to become liable and that the insured, who selected the treatment facility,
"occasioned," "caused," or "brought on" the obligation to pay for the services rendered. Id. at 437
(citing Olesijuk, 353 S.W.2d at 72). The court held, as a matter of law, that, when an insured
receives healthcare services, there is created an implied contract to pay for those services, and the
insured is liable until he or she (or a third party) pays the bill. Id. The fact that an insured's action
may create a derivative obligation on the part of a third party to pay or reimburse the expenses does
not in any way affect the insured's obligation under the implied contract between the insured and the
healthcare provider. Id. If a derivative obligor fails to pay, the healthcare provider would still have
some legal remedy against the insured. Id. at 437–38.
 
            The facts—that Forth did not have any out-of-pocket expense or that Forth's healthcare
providers are now likely barred by the applicable statute of limitations from collecting from Forth
the portion of her expenses left unpaid—do not change this analysis. See Tex. Civ. Prac. & Rem.
Code Ann. § 16.004 (Vernon 2002). The point is that Forth incurred necessary medical expenses
because of bodily injuries resulting from a motor vehicle accident and that Allstate, by the terms of
its own policy, agreed to pay those expenses, if reasonable. Anything less than the payment of a
reasonable amount of those expenses would result in a distinct injury to Forth—that is, receiving less
than the sums for which she contracted. Therefore, Forth has standing to seek a new review, using
a reasonableness standard, of her claim previously reviewed by MBRS and its eighty-fifth percentile
standard.



Conclusion
            Although the trial court was correct in dismissing that portion of Forth's case addressing
Allstate's use of MBRS or its methodology on future claims, it erred in granting Allstate's motion
to dismiss as to its review of Forth's past claim, because Forth does have standing to pursue
declaratory and injunctive relief seeking Allstate's re-evaluation of the process by which it
determined the reasonableness of her personal injury protection claims. Accordingly, we vacate the
trial court's order of dismissal, to the extent it covered Forth's past claims and those of the putative
class, and remand for further proceedings consistent with this opinion.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          November 12, 2004
Date Decided:             December 8, 2004